UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

TOMMY LEE JORDAN,         )
         )
       Petitioner,         )
         )
   v.         )     No.  4:04CV409 CAS
         )            (TIA)
MICHAEL S. BOWERSOX,         )
         )
       Respondent.         )

## REPORT AND RECOMMENDATION

This cause is before the Court on Missouri state prisoner Tommy Lee Jordan's pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (filed April 7, 2004/Docket No. 1). All pretrial matters were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b).

On December 29, 1995, Petitioner was convicted by a jury in the Circuit Court of Shannon County, Missouri, of one count of first degree murder and one count of armed criminal action. (Resp. Exh. 6 at 103-04). On February 16, 1996, the circuit court sentenced Petitioner pursuant to the jury verdicts for first degree murder and armed criminal action to life without parole and twenty-five years, respectively, the sentences to run concurrently. (Resp. Exh. 6 at 130). Petitioner appealed the judgment, and on November 15, 1996, Petitioner's conviction and sentence were affirmed on direct appeal by the Missouri Court of Appeals. (Resp. Exh. 10; State v. Jordan, 937 S.W.2d 262 (Mo. Ct. App. 1996)). On April 22, 1997, Petitioner filed a pro se motion for post-conviction relief under Rule 29.15. (Resp. Exh. 13at 7). On July 22, 1997, Petitioner's appointed counsel filed an Amended Motion to Vacate, Set Aside or Correct the Judgment or Sentence under Missouri Supreme Court Rule 29.15. (Resp. Exh. 13 at 44-79). The post-conviction relief court dismissed

Petitioner's post-conviction motion after an evidentiary hearing on June 19, 2002. (Resp. Exh. 13 at 167-87). On May 14, 2003, the Missouri Court of Appeals affirmed the dismissal of Petitioner's post-conviction relief. (Resp. Exh. 18). On June 19, 2003, the Missouri Court of Appeals denied Petitioner's Motion for Rehearing and/or Transfer to the Missouri Supreme Court. Petitioner pursued no other action for review of his convictions and sentence in state court. The instant petition for writ of habeas corpus was filed on April 5, 2004.

Petitioner is currently incarcerated at the South Central Correctional Center in Licking, Missouri, pursuant to the sentence and judgment of the Circuit Court of Shannon County. In the instant petition for writ of habeas corpus, Petitioner raises eighteen grounds for relief:

(1)     That the trial court erred in granting the State's motion in limine, sustaining his objection, and rejecting Petitioner's attorney's offer of proof, thereby precluding Petitioner from adducing evidence showing his belief that he had to shoot the decedent in order to prevent him from sodomizing his stepson and the jury from hearing both sides of the issue;

(2)     That Petitioner was overzealously prosecuted and received harsher treatment because he murdered an assistant prosecutor's brother;

(3)     That Petitioner was denied effective assistance of counsel in that trial counsel failed to seek a change of venue from Shannon County;

(4)     That Petitioner was denied effective assistance of counsel in that trial counsel failed to inform Petitioner that if he pleaded self-defense it would render inadmissible the evidence of the decedent's sodomy of C.G.B.;

(5)     That Petitioner was denied effective assistance of counsel in that trial counsel failed to discover that the trial judge had once represented the decedent's grandfather in a divorce;

(6)     That Petitioner was denied effective assistance of counsel in that trial counsel failed to investigate and challenge the decedent's sister's role in the case;

(7)     That Petitioner was denied effective assistance of counsel in that trial counsel failed to make an offer of proof regarding the decedent's alleged commission of

sodomy thereby convincing the trial court to admit the evidence or preserving appellate review of the issue;

(8)     That the trial court erred in apprising Petitioner of its ruling in a bench conference about what Petitioner could testify to concerning his belief that the decedent was sodomizing his stepson;

(9)     That Petitioner was denied effective assistance of counsel in that trial counsel failed to apprise Petitioner of its ruling after the bench conference on what he could testify he said to the decedent at the scene of the shooting;

(10)    That the State improperly adduced evidence by asking Petitioner questions he could not truthfully or persuasively answer without violating the motion in limine;

(11)    That Petitioner was denied effective assistance of counsel in that trial counsel failed to research applicable law of defense of another so that Petitioner's admittedly perjured self-defense testimony hurt his direct appeal;

(12)    That the local law enforcement officials removed the decedent's shaving kit he held at the time of the shooting thereby withholding exculpatory transactional or impeachment evidence;

(13)    That Petitioner was denied effective assistance of counsel in that trial counsel failed to investigate the removal and loss of decedent's shaving kit form the scene of the shooting;

(14)    That Petitioner was denied effective assistance of counsel in that trial counsel failed to prepare for Petitioner's trial testimony;

(15)    That Petitioner was denied effective assistance of counsel in that trial counsel failed to preserve all but two claims of constitutional error for appellate review;

(16)    That Petitioner was denied effective assistance of counsel in that post-conviction counsel at the hearing allowed Petitioner to admit he perjured himself at trial;

(17)    That Petitioner was denied effective assistance of counsel in that direct appeal counsel failed to provide sufficient federal constitutional authority to support the claim that the trial court erred in excluding his sodomy accusations against the decedent; and

(18)    That the trial court erred in admitting evidence that three days before the shooting, Petitioner was arrested driving while intoxicated two miles from the decedent's home with several loaded weapons in his vehicle.

In response, Respondent contends that Petitioner has exhausted his claims inasmuch as they have been properly raised in the state courts or because Petitioner has no available non-futile state remedies by which he could present these claims.

## I.    Non-Cognizable Claim

In his sixteenth ground for relief, Petitioner claims that he received ineffective assistance of his Rule 29.07 post-conviction counsel in that counsel allowed him to admit that he had perjured himself at trial.

Federal habeas relief is available to a state prisoner only on the ground that he is in custody in violation of a constitutional or federal statutory right. Williams-Bey v. Trickey, 894 F.2d 314, 317 (8th Cir. 1990); 28 U.S.C. § 2254(a). Claims that do not reach the level of "constitutional magnitude" cannot be addressed in a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Carter v. Armontrout, 929 F.2d 1294, 1296 (8th Cir. 1991). "Section 2254 only authorizes federal courts to review the constitutionality of a state criminal conviction, not infirmities in a state post-conviction relief proceeding." Williams-Bey, 894 F.2d at 317. There is no constitutional right to an attorney in state post-conviction proceedings. Coleman v. Thompson, 502 U.S. 722, 750 (1991); citing Pennsylvania v. Finley, 481 U.S. 551 (1987). A petitioner cannot, therefore, claim that he received constitutionally ineffective assistance of counsel in such proceedings. Coleman, 501 U.S. at 750; citing Wainwright v. Torna, 455 U.S. 586 (1982) (where there is no constitutional right to counsel, there can be no claim of deprivation of effective assistance).

Petitioner's instant claim that the Rule 29.07 post-conviction motion counsel erred by allowing Petitioner to admit he had perjured himself at trial challenges the effectiveness of his post-conviction attorney. Because there is no federal constitutional right to effective assistance of post-

conviction counsel, Petitioner's claim that he received ineffective assistance of Rule 29.07 post-conviction motion counsel does not state a ground for relief in federal habeas corpus, and therefore is not cognizable in this § 2254 proceeding. <u>Coleman</u>, 501 U.S. at 750; <u>Torna</u>, 455 U.S. at 587-88. As such, the claim raised in Ground 16 of the instant petition is not cognizable in these proceedings, and should be denied.

## II.     Cognizable Claims

Section 2254(d)(1) requires federal habeas courts to test the determination of state courts "only against 'clearly established Federal law, as determined by the Supreme Court of the United States,'" and prohibits the issuance of a writ of habeas corpus "unless the state court's decision is 'contrary to, or involved an unreasonable application of,' that clearly established law." <u>Williams v. Taylor</u>, 529 U.S. 362, 379 (2000). The federal law must be clearly established at the time petitioner's state conviction became final, and the source of doctrine for such law is limited to the United States Supreme Court. <u>Id.</u>, 529 U.S. at 380-83.

A state court's decision is "contrary to" clearly established law if "it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme Court] but reaches a different result." <u>Brown v. Payton</u>, 125 S.Ct. 1432, 1438 (2005). A decision involves an "unreasonable application" of clearly established law if "the state court applies [the Supreme Court's] precedents to the facts in an objectively unreasonable manner." <u>Id.</u> at 1439; <u>Williams</u>, 529 U.S. at 405. "Federal habeas relief is warranted only when the refusal was 'objectively unreasonable,' not when it was merely erroneous or incorrect." <u>Carter v. Kemna</u>, 255 F.3d 589, 592 (8th Cir. 2001) (quoting <u>Williams</u>, 529 U.S. at 410-11).

As an initial matter, the undersigned notes that the Missouri Court of Appeals summarized

the facts regarding the issue on appeal:

> Rick Brown (decedent), who lived in Kansas City, was previously married to Defendant's wife, Kari, and was the father of her three-year-old son (C.B.). Defendant lived near Eminence, Missouri, with Kari, C.B., and Kari's daughter.
>
> Decedent was scheduled to pick up C.B. on December 31, 1994 to exercise visitation privileges. When decedent arrived that morning at an apartment in Eminence where his girlfriend was staying, however, Defendant was waiting to tell him that he could not take C.B. According to Defendant, when he did so, decedent screamed that Defendant was going to die and started opening a shaving kit he was carrying. Defendant testified that he reached into his truck for a gun after pushing decedent to the ground and knocking the shaving kit from his hands. When he looked back, he saw that decedent was still on the ground but was turning to point a pistol at him.FN1
>
> > FN1.    There was evidence that, following the shooting, no pistol was found at the scene which could be linked to decedent.
>
>   He said that he then shot decedent three times while he was on the ground and once after he got up. Decedent died as a result of the wounds he received.
>
> At Defendant's request, the trial court instructed on self-defense. In this appeal from his convictions, Defendant challenges the trial court's exclusion of evidence which he says indicated that decedent had been sexually abusing C.B., and its admission of evidence concerning his prior arrest for DWI.

(Resp. Exh. 10 at 1-2; State v. Jordan, 937 S.W.2d 262, 263(Mo. Ct. App. 1996). Inasmuch as

Petitioner does not rebut these factual findings by clear and convincing evidence, they are presumed

to be correct. 28 U.S.C. § 2254(e)(1).

## A.    Claims Addressed on the Merits

### 1.    Ground 1

In Ground 1 of the instant petition, Petitioner claims that the trial court erred in granting the

State's motion in limine, and rejecting Petitioner's attorney's offer of proof, thereby precluding

Petitioner from adducing evidence showing his belief that he had to shoot the decedent in order to prevent him from sodomizing his stepson and the jury from hearing both sides of the issue.

Petitioner raised this claim on direct appeal of his conviction. (Resp. Exh. 10 at 2-15; State v. Jordan, 937 S.W.3d 262, 263-67 (Mo. Ct. App. 1996)). The Missouri Court of Appeals denied Petitioner's claim finding that the proposed evidence supported Petitioner's self-defense theory by explaining the hostility that caused decedent to attack him, but Petitioner's offer of proof failed to make the connection between the alleged child abuse and decedent's awareness that Petitioner knew about the alleged abuse. (Resp. Exh. 10 at 2-8; Jordan, 937 S.W.2d at 263-64). In relevant part, the Missouri Court of Appeals opined as follows:

> In his first point on appeal, Defendant alleges error because the trial court sustained the State's motion in limine and rejected his offer of proof concerning evidence that decedent had sexually abused C.B., an allegation which he says he communicated to decedent both before and at the time of the occurrence in question.
>
> > FN2. The only evidence referred to by Defendant in support of his contention that he communicated these allegations to decedent before the day of the shooting is his offer to prove that he made comments to decedent's father. There was no evidence, however, that these statements were ever communicated to decedent.
>
> In support, he contends that (1) when self-defense is an issue, all circumstances under which the homicide occurred are admissible, which would "throw light upon the transaction as it presented itself to [him], or could have affected him in his actions or apprehensions of danger"; (2) the evidence would have assisted the jury in deciding the veracity of Defendant's testimony about the decedent's actions and whether he would have reacted in an aggressive manner; and (3) the evidence was relevant to Defendant's state of mind. As we understand the premise of Defendant's point, it is that decedent would be expected to react violently if he had been told that Defendant had discovered decedent's conduct with his son and was going to expose it.
>
> In support of his contention, Defendant relies primarily on State v. Burns, 312 Mo. 673, 280 S.W. 1026 (Mo.1926), a case in which the defendant was convicted of assault with intent to kill. The evidence was that the victim was approaching

defendant and his wife on the street; the victim had his hands in his pockets, and had an insolent attitude and "queer" look; and the defendant shot the victim when he saw his hands move and presumed he was about to draw a weapon. The trial court, however, had excluded evidence that the victim had earlier made improper advances toward the defendant's wife which she reported to defendant, and that defendant had sent a third person to the victim to demand that he stop such conduct. The supreme court described the issue as whether the excluded evidence should have been admitted as tending to explain the defendant's conduct when he shot the victim, to aid the jury in deciding who was the aggressor, and in determining the reasonableness of defendant's fear. Id. 280 S.W. at 1029. It held that the exclusion of the evidence was reversible error. Id 280 S.W. at 1033.

Factually, the instant case is distinguishable from Burns. Here, the jury heard other evidence of hostility between decedent and Defendant, including conduct and statements by decedent which Defendant understood to be threats that he would be shot. Defendant testified that he and Kari started living together before her marriage to decedent was dissolved, and hostility apparently developed between him and decedent over the next several months. At one point, Defendant was injured in a motorcycle accident and was told by a friend that decedent had said that he (decedent) was going to finish Defendant off with a lead pipe.

Defendant also testified about a phone conversation when he told decedent that he could not take C.B. to his home in Kansas City for extended visits unless he used a licensed day care center, whereupon decedent said, "I'll pop a cap in your a__ over this." Defendant said he interpreted that as meaning decedent was going to shoot him. He also testified about an incident following a visit by himself, decedent and C.B. to a psychologist's office in which decedent "pointed at me and went bang, bang, bang, and then he drove off." This evidence alone may have been sufficient to demonstrate the animosity allegedly harbored by the decedent so that the exclusion of the evidence referred to in this point, even if error, may be considered harmless. See State v. Malone, 39 S.W.2d 786, 789 (Mo. 1931).

(Resp. Exh. 10 at 2-5; Jordan, 937 S.W.2d at 263-64).

The Missouri Court of Appeals further opined that the granting of the motion in limine was an interlocutory ruling. (Resp. Exh. 10 at 5-8; Jordan, 937 S.W.2d at 264-65). In relevant part, the Missouri Court of Appeals opined as follows:

Although Defendant includes the granting of the State's motion in limine in his allegation of error, we note that the granting of such a motion is interlocutory only and does not, in itself, raise an issue for appeal. State v. Purlee, 839 S.W.2d 584, 592

(Mo. banc 1992). When a motion in limine is granted, the proponent of the evidence, in order to preserve the issue for appellate review, must attempt to present the excluded evidence at trial, and if an objection is sustained, must make an offer of proof. Id.

Defendant made an offer of proof concerning evidence of decedent's sexual abuse of C.B., which was rejected by the trial court. Included was the testimony of Defendant, Kari, and her parents, presented out of the hearing of the jury. Kari's parents testified about changes they noticed in C.B.'s behavior after having been with decedent, including anger and clinging to Defendant and Kari. Kari testified that after decedent's visitations, C.B. could not sleep, he had nightmares, he would hide when he heard cars, and he became angry. She also said that when she would change C.B.'s diaper he would cover his penis and say "don't bite," and that he also stuck "his finger up his hind end and said it hurts."

Defendant also testified as part of his offer. He said that when he was changing C.B.'s diaper after his first visit with decedent, C.B. "covered up himself and said, don't bite pee pee, Da." C.B. said the same thing on other occasions and would point at his rectum and say "hurt, Da, hurt." He also said that he asked C.B. who was biting his "pee pee" and he said "Rick is Da." Defendant said that convinced him "that there was something going on that shouldn't have been going on," and that was "the reason [he] went to confront [decedent] that morning then, to stop the visitation."

An offer of proof should be specific and in sufficient detail to demonstrate the admissibility of the excluded evidence. State v. Townsend, 737 S.W.2d 191, 192 (Mo. banc 1987); see also State v. Dixon, 668 S.W.2d 123, 126 (Mo.App. S.D. 1984)(an offer of proof must demonstrate that the excluded evidence is relevant and material). Defendant's contentions under this point all hinge on the communication to decedent of his beliefs about decedent's conduct with C.B. He argues:

> It is this type of evidence, that deceased had a motive in acting aggressively toward him, that Appellant sought to introduce. Specifically, that Appellant suspected decedent of sexually abusing [C.B.] and he was going to pursue it by taking [C.B.] to a psychiatrist. Under those circumstances, the jury could infer decedent would react in an aggressive manner towards Appellant, especially if Appellant's suspicions were true, in which case it could be expected decedent might react in a deadly manner to try to conceal his improprieties with his infant son.

The excluded evidence about which Defendant complains, however, does not establish that he ever communicated these allegations to decedent. In his offer of

proof, Defendant testified as follows:

Q.    In your own mind, was that, did that convince you that there was something going on that shouldn't have been going on?

A.    Yes, and this --

Q.    Is that the reason you went to confront Rick that morning then, to stop the visitation?

A.    Yes.

While Defendant testified in his offer that the *reason* he went to meet decedent the morning of the shooting was to stop the visitation because of what he believed, he did not say that this was told to decedent.  Later, in Defendant's offer, he testified:

Q.    The confrontation down here that morning between you and Rick Brown, did he admit to this molestation to you?

A.    He said, I can do with my kid on my time whatever I want to.

This was not evidence that Defendant had actually communicated his accusations to decedent.  By this question, Defendant's counsel apparently sought to create an inference with such an accusation had been made.  Defendant's answer, however, was not responsive to the question as phrased.  We do not construe this answer as constituting evidence that Defendant actually confronted decedent with allegations of sexual abuse.  It certainly does not require a reversal on the basis argued by Defendant.

(Resp. Exh. 10 at 2-8; <u>Jordan</u>, 937 S.W.3d at 263-65).

Nonetheless, the trial court allowed Petitioner to testify at trial about what he told decedent and his accusation of alleged child abuse by decedent.  (Resp. Exh. 10 at 8-11; <u>Jordan</u>, 937 S.W.2d at 265-66).  In relevant part, the Missouri Court of Appeals opined as follows:

It is significant to note that the trial court did not preclude Defendant from testifying about what he told decedent.  At trial, the State objected when Defendant started to testify about what he told decedent on the morning of the shooting, anticipating that Defendant was going to testify that he accused decedent of sexual abuse.  The prosecutor argued that sexual abuse did not relate to the Defendant's fear of the decedent.  In response to the objection, Defendant's counsel stated that

Defendant was going to testify that "he confronted the deceased with the fact that, that I know that you've sexually molested these kids,"FN3 and theorized that that was why decedent made an attempt to kill Defendant.

> FN3. Defendant apparently contended that decedent had also abused Kari's daughter.

Defendant's counsel also argued that the decedent's reaction to this accusation was what triggered the self-defense.

The trial court, rather than preventing Defendant from testifying about what he told decedent, said, "I'm going to let him answer the question once, but I don't want you dwelling on it." The court also said, "... I'm going to overrule the State on this and let you elicit what was said, but limit it to one time, if you can." The following then occurred:

(Defendant's counsel): Now, tell the jury what happened then when [decedent] came up to you.

A.     I said, Rick, I know what you've been doing to [C.B.]. I know what you have done to [M.]. You're not going to get [C.B.] this weekend and I'm taking the kids to a psychiatrist to get proof next week.

(Defendant's counsel): What happened after that?

A.     He screamed at me, you're not going to do nothing but die, MF, and he had a shaving kit. He started opening the shaving kit. I reached out and slapped the shaving kit down. He went for the shaving kit, I nudged him, pushed him. He went on down to the ground. I turned back to my truck, got my gun out, spun around with it in one hand. He was on the ground. He had a gun out, a little automatic. He turned to shoot at me and he hit his left arm while he was still on the ground. I said, Rick, no. He went ahead coming up and around with it and I fired three times from my side. At that time he stood on up and pointed away from me, headed away from me, and I shot one more time. At that time he took two or three, four more steps and fell down.

(Defendant's counsel): Were you in fear?

A.     He was going to shoot me. Yeah, I was in fear. I was surprised at him a yelling at me like he did and, yes, I was in fear.

There is no indication that the trial court prevented Defendant from testifying that he accused decedent of sexually abusing C.B. To the contrary, the trial court

permitted Defendant to answer the open-ended question about what he told decedent that morning after being informed by his counsel that he was going to testify that he accused the decedent of sexually molesting C.B. Defendant did testify that he told decedent he knew what he had been doing to C.B., and that he was going to get proof. Defendant was not restricted by the court in answering the question, and if the accusation had included a specific reference to sexual abuse, he could have said so. We are unable to conclude that the trial court erred as alleged by Defendant.

(Resp. Exh. 10 at 8-11; Jordan, 937 S.W.3d at 265-66).

The Missouri Court of Appeals further noted that because Petitioner admittedly lied about the killing being in self-defense and testified under oath that this theory of defense was fabricated and based on perjured testimony, finding reversible error "would constitute a perversion of the appellate process. (Resp. Exh. 10 at 11-15; Jordan, 937 S.W.2d at 266-67). In relevant part, the Missouri Court of Appeals opined as follows:

Another reason why Defendant cannot be heard to complain about the exclusion of this evidence, as it related to his theory of self-defense, appears in the record of the Rule 29.07(b)(4) hearing held by the trial court immediately after sentencing. Defendant's present counsel appeared on his behalf to argue the motion for new trial and represented him at sentencing, including the Rule 29.07(b)(4) proceeding which followed.FN4

FN4. Defendant's present counsel did not represent him at trial.

Defendant's counsel was permitted, at his request, to interrogate Defendant in connection with the inquiry under Rule 29.07(b)(4), at which time Defendant testified, under oath, as follows:

(Defendant's counsel): Do you remember when I first met you in the jail?

A.    Yes.

Q.    And do you remember what I told you I wanted to hear?

A.    You wanted to hear the truth.

Q.    And did I tell you that at some point in these proceedings you would be expected to take the stand, whether that be at a new trial or here today as you are doing?

- 12 -

A.      Yes, you did.

Q.      And did I tell you would have to tell the truth then?

A.      Yes, sir.

Q.      Do you remember testifying at your trial?

A.      Yes.

Q.      And testifying that you shot Rick Brown in self-defense?

A.      I remember testifying that, yes.

Q.      Was that the truth?

A.      No.

Q.      You did not shoot Rick Brown in self-defense?

A.      No.

Q.      Could you tell us, please, why it was that you shot Rick Brown?

A.      I shot Rick Brown because he had molested [M], his six year older sister.  He was molesting [C.B.] and because of him and his dad getting into it and I got the phone call the night before, I thought [C.B.] would be molested that day again.

Q.      Unless you did something?

A.      Unless I got it stopped.

Defendant claimed that his trial counsel told him that justifiable homicide or defense of a third person was not a viable defense because he had not actually seen decedent molesting C.B.  He also claimed that trial counsel told him that in order for them to use self-defense in defending the case it would be necessary for him to testify that he saw decedent with a gun.  He testified that, although he told his trial counsel what actually happened, his attorney said, "you can't say that," and that he testified at trial as he did because of his attorney's statements.

On cross-examination by the State, Defendant said:

(The Prosecutor): Mr. Jordan, then do you admit here in open court that you committed

- 13 -

perjury when you testified before?

A.    Yes, sir, I do.

Defendant's counsel later argued to the trial court that the evidence presented after sentencing was in support of his claim of ineffective assistance of counsel. He contended that Defendant's trial counsel was ineffective because if he had permitted Defendant to testify truthfully (that he killed decedent to protect C.B.), the evidence about the molestation of C.B. would have been admissible.

Notwithstanding the reasons for presenting this evidence to the trial court in connection with the Rule 29.07(b)(4) inquiry, we are faced with a claim of error based primarily on the theory that the excluded evidence was admissible in connection with Defendant's theory of self-defense. Defendant, however, has voluntarily testified under oath that this theory of defense was fabricated and based on perjured testimony. He therefore asks us to find reversible error based on the validity of a defense which he admits was inapplicable. To do so would constitute a perversion of the appellate process.

Defendant argues that the Rule 29.07(b)(4) inquiry is distinct from the criminal case itself and is for the limited purpose of ascertaining whether probable cause exists to find that he received ineffective assistance of counsel. In support, he cites State v. Hurtt, 836 S.W.2d 56 (Mo. App. S.D. 1992). This court, in Hurtt, acknowledged that the Rule 29.07(b)(4) inquiry is to assist a defendant in providing a remedy if representation has been ineffective, and that an inquiry by the court in that proceeding does not violate a defendant's Fifth Amendment right not to testify against himself. Id. at 61. There, however, we held that a defendant's responses to such an inquiry can be considered in weighing his subsequent testimony concerning the ineffectiveness of his counsel. Id.

Hurtt cannot be stretched to support the argument, which Defendant in effect makes here, that his conviction should be reversed based on the exclusion of evidence which he contends was relevant to his theory of defense, even though he voluntarily admitted in the Rule 29.07(b)(4) hearing that that defense was based on perjury.

An admission by a defendant in a postconviction[*sic*] proceeding that he lied to the court in connection with the criminal case is evidence of fraud upon the court. Foster v. State, 593 S.W.2d 636, 639 (Mo.App. E.D. 1980). As indicated in Garner-Roe v. Anderson, 894 S.W.2d 223, 227 (Mo.App. E.D. 1995), our courts will not condone conduct which constitutes such a fraud. This conduct is not excused, as Defendant seeks to do here, by his allegation that it was a response to what he understood his trial counsel said about the law of self-defense.

Defendant's first point is denied.

(Resp. Exh. 10 at 11-15; Jordan, 937 S.W.2d at 266-67).

The state court's rejection of Petitioner's claim constituted adjudication on the merits of the claim and must be reviewed under the deferential provisions of 28 U.S.C. § 2254(d)(1). Section 2254(d)(1) requires federal habeas courts to test the findings of state courts only against clearly established federal law, as determined by the Supreme Court of the United States. Further, § 2254(d)(1) prohibits the issuance of a writ of habeas corpus unless the state court's decision is contrary to, or involved an unreasonable application of that clearly established law. Williams v. Taylor, 529 U.S. 362, 379 (2000). The federal law must be clearly established at the time Petitioner's state conviction became final, and the source of doctrine for such law is limited to the United States Supreme Court. Id. at 380-83.

A state court's decision is contrary to clearly established Supreme Court precedent when it is opposite to the Court's conclusion on a question of law or different than the Court's conclusion on a set of materially indistinguishable facts. Williams, 529 U.S. at 412-13; Carter v. Kemna, 255 F.3d 589, 591 (8th Cir. 2001). A state court's determination is an unreasonable application of Supreme Court precedent if it unreasonably refuses to extend a legal principle to a new context where it should apply. Carter, 255 F.3d at 592 (citing Williams, 529 U.S. at 407). "Federal habeas relief is warranted only when the refusal was 'objectively unreasonable,' not when it was merely erroneous or incorrect." Id. (quoting Williams, 529 U.S. at 410-11). To be unreasonable, the state court's application of the Supreme Court precedent "must have been more than incorrect or erroneous." Wiggins v. Smith, 539 U.S. 510, 520-21 (2003).

At the time Petitioner's conviction became final, the law was clearly established that the

determination as to the admission of evidence under state law violates the Due Process Clause of the Fourteenth Amendment only if such determination fatally infects the trial so as to render the trial fundamentally unfair. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Lisenba v. California, 314 U.S. 219, 236 (1941). The issue of admissibility of evidence is a state law question. Estelle, 502 U.S. at 67-68; Rousan v. Roper, 436 F.3d 951, 958 (8th Cir.) ("[q]uestions regarding admissibility of evidence are matters of state law"), cert. denied, 127 S. Ct. 68 (2006). Rulings on the admission or exclusion of evidence in state trials rarely rise to the level of a federal constitutional violation. Nebinger v. Ault, 208 F.3d 695, 697 (8th Cir. 2000). "A federal issue is raised only where trial errors infringe on a specific constitutional protection or are so prejudicial as to amount to a denial of due process." Bucklew v. Luebbers, 436 F.3d 1010, 1018 (8th Cir.), cert. denied, 127 S. Ct. 725 (2006). "The [applicant] must show that the alleged improprieties were so egregious that they fatally infected the proceedings and rendered his entire trial fundamentally unfair." Rousan, 436 F.3d at 958-59 (quotation omitted).

In Missouri, whether the probative value outweighs the prejudicial effect of proffered evidence is a question on which a trial court has wide latitude. State v. Swigert, 852 S.W.2d 158, 163 (Mo. Ct. App. 1993). The United States Supreme Court has emphasized that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle, 502 U.S. at 67. For an alleged evidentiary error to have violated Petitioner's constitutional rights, Petitioner "must show a reasonable probability that the error affected the trial's outcome," Richardson v. Bowersox, 188 F.3d 973, 980 (8th Cir. 1999) (internal quotation marks and citations omitted), that is, whether there is a reasonable probability that the verdict might have been different had the error not occurred. Harris v. Bowersox, 184 F.3d 744, 752 (8th Cir. 1999). The federal

court must find more than trial error or even plain error to warrant habeas relief on the basis of evidentiary questions. McCafferty v. Leapley, 944 F.2d 445, 452 (8th Cir. 1991). Therefore, the undersigned is limited to addressing whether Petitioner's constitutional rights were violated by the exclusion of the evidence. Rainer v. Department of Corrs., 914 F.2d 1067, 1072 (8th Cir. 1990). "No due process violation exists for the admission of prior bad acts testimony unless it can be said that the testimony was 'so conspicuously prejudicial or of such magnitude that it fatally infected the trial and deprived [defendant] of fundamental fairness.'" McDaniel v. Lockhart, 961 F.2d 1358, 1360 (8th Cir. 1992) (quoting Hobbs v. Lockhart, 791 F.2d 125, 128 (8th Cir. 1986)). For the following reasons, a review of the entire trial process here shows the exclusion of the evidence in question not to have rendered Petitioner's trial fundamentally unfair, and Petitioner's claim that he was denied a fair trial must fail.

The evidence complained of here, namely the exclusion of the evidence showing Petitioner's belief that he had to shoot the decedent in order to prevent him from sodomizing his stepson, was excluded after the trial court sustained the State's motion in limine and rejected his offer of proof concerning evidence that decedent had sexually abused C.G.B. At the close of the State's case, the trial court again addressed the motion in limine. (Resp. Exh. 3 at 580-600- Resp. Exh. 4 at 601-08). In anticipation of a possible defense of self-defense, the State argued in support of the exclusion of the evidence of alleged sexual abuse of C.G.B. by decedent as follows:

The State:    But if, if the Defense chooses to pursue a defense of self-defense, then I suppose as we speculate further that the reasonableness of the fear that Tommy Jordan felt, then that's relevant, and perhaps circumstances surrounding the confrontation, that might be relevant to explain state of mind if self-defense is the defense they choose to go for, but how is the relevance, where is the relevance of what [C.G.B.]said to his mother, you know, months before this? How is that relevant to the fear of this Defendant, or whether he had a weapon or not? You know, there's apples and

oranges there, and certainly --

The Court:    To answer your question, the Court feels it is not relevant.  At this point the Court is sustaining the motion in limine.  However, however[*sic*], I want the Defense to know that

I'm going to try to be as open minded and lenient as I can.  I want you to have every opportunity to present any defense you have, but the way I've read the law on the motion in limine, I'm sustaining your motion in limine.  I don't want hearsay upon hearsay about a, this child, what the child said.  Now I know there's an area there that you offer it not for the truth of it, but for some other reason.  If you are going the state of mind the Court will try to be very tolerant in that area, but for the record, I'm sustaining your motion in limine, but I'm going to also consider each point that you desire to present and we may wear out the carpets coming to the bench, but I'm going to give you every opportunity, Mr. Kidwell, and Mr. Moore, to get what defenses you can, but I'm sustaining the motion in limine because I just don't feel it has a place in this case.

(Resp. Exh. 4 at 605-06).  As part of an offer of proof, Petitioner presented testimony from various family members who testified that after decedent started his visitations with C.G.B., the child's demeanor changed, and he became withdrawn and started covering his penis and saying "don't bite." (Resp. Exh. 4 at 610-12, 618-20, 622, 627-28).  C.G.B.'s mother further testified that C.G.B. inserted his finger in his rectum and said "it hurts."  (Resp. Exh. 4 at 622).  Later in the trial following the close of the State's rebuttal case, Petitioner testified in an offer of proof.  (Resp. Exh. 4 at 775-77).  Petitioner indicated that in November and December, C.G.B. for the first time stated to him after a bath, "don't bite pee pee, Da, don't bite pee pee."  (Resp. Exh. 4 at 776).  Petitioner testified that on the morning of the murder, he intended to tell the decedent that he would not have visitation because of the alleged sexual abuse.  (Resp. Exh. 4 at 777).  The trial court denied Petitioner's offer of proof  in relevant part as follows:

The Court feels, after considering all of the evidence and observing the witnesses, that the Court should deny the offer of proof and re-sustain the motion in limine.  The Court finds that these issues are not, this matter is not relevant to the issues in this

case. I have a great deal of question about credibility of certain witnesses as a result of the stormy divorce.... There's a possibility some of this is too remote in time and the Court, the materiality is a question, the relevancy is a concerning question and it's highly inflammatory and prejudicial, this Court feels, and that's why the Court is keeping it out.

(Resp. Exh. 4 at 784).

The Missouri Court of Appeals in affirming the trial court's ruling, specifically noted that Petitioner's offer of proof failed to establish that he ever communicated these allegations of sexual abuse to decedent. Jordan, 937 S.W.2d at 265. The Court of Appeals determined that nonetheless, the trial court did not preclude Petitioner from testifying about what he told decedent thereby provoking the attack that required self-defense, because the trial court permitted Petitioner's counsel to elicit testimony about what Petitioner said to decedent the morning of the shooting. Id. at 265-66. Indeed, the court opined that Petitioner was not restricted by the trial court in answering the question, and if the accusation had involved a specific reference to sexual abuse, Petitioner could have testified regarding the same. Id. at 266. Another reason the court cited in support of the exclusion of the evidence as related to his theory of self-defense is Petitioner's own admission of perjured trial testimony at the Rule 29.07(b) (4) hearing. Id. at 266-67. The Court of Appeals opined that to find reversible error based on the validity of a defense now admitted to be inapplicable, as advocated by Petitioner, "would constitute a perversion of the appellate process." Id. at 267. The undersigned finds that based on the record it cannot be said that the exclusion of the evidence would have caused the outcome of the trial to be different.

The State Court's findings and conclusions are not contrary to, nor do they involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; nor did they result in a decision that was based on an unreasonable determination

of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). The State Court's findings are based on rules of evidence that correspond to federal law. The exclusion of the evidence of the alleged sexual abuse had a legitimate basis.

Based on the above, the state court's decision denying Petitioner relief is well based on law and fact. The undersigned is unaware of any "clearly established Federal law, as determined by the Supreme Court of the United States" of which the court's decision runs afoul, nor has Petitioner demonstrated such. Therefore, it cannot be said that the state court's adjudication of the instant claim "resulted in a decision that was contrary to, or involved an unreasonable application of," clearly established federal law. 28 U.S.C. §2254(d)(1). Neither has Petitioner shown that the court's determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). As such, the instant claim should be denied. 28 U.S.C. §2254(d).

### 2.    <u>Ground 2</u>

In Ground 2 of the instant petition, Petitioner contends that he was overzealously prosecuted due to nepotism and received harsher treatment because he murdered an assistant prosecutor's brother. In particular, Petitioner argues that decedent's sister, Kathy Brown Reeves, served as an assistant prosecuting attorney and advocated that Petitioner receive the death penalty, influenced the selection of a judge in the proceedings, and contributed to harsher treatment of Petitioner because of her relationship with the prosecutor's office.

Petitioner raised this claim on appeal of his post-conviction relief. (Resp. Exh. 14 at 28-31). The Missouri Court of Appeals denied Petitioner's claim in alternate holdings finding the claim

defaulted in the direct appeal process, and the claim to be without merit. (Resp. Exh. 18 at 8-9).[1]

In relevant part, the Missouri Court of Appeals opined as follows:

> A Rule 29.15 motion for post-conviction relief ordinarily cannot be used as a substitute for matters that could have been raised on direct appeal. State v. Jones, 979 S.W.2d 171, 181 (Mo. banc 1998); Fisher v. State, 57 S.W.3d 329, 334 (Mo. App. 2001); Soutee v. State, 51 S.W.3d 474, 480 (Mo. App. 2001); State v. Kirk, 918 S.W.2d 307, 310 (Mo. App. 1996). This rule against raising direct appeal issues in a post-conviction motion also applies to constitutional claims. "Assertions of trial court error that allege constitutional violations are not cognizable in a postconviction[*sic*] relief proceeding unless exceptional circumstances are shown that justify not raising the constitutional grounds on direct appeal." Allen v. State, 903 S.W.2d 246, 247 (Mo. App. 1995); *see also* State v. Clay, 975 S.W.2d 121, 134 (Mo. banc 1998) (movant's claim of prosecutorial misconduct not preserved for appeal and therefore dismissed when the issue was not raised at trial); Armine v. State, 785 S.W.2d 531, 536 (Mo. banc 1990) (issues of trial error are not cognizable in a post-conviction proceeding unless exceptional circumstances are shown justifying the failure to raise the issues on direct appeal).

> Here, Movant failed to raise the issue of prosecutorial misconduct on direct appeal. He points to nothing in the record demonstrating exceptional circumstances that justify his failure to raise the issue of prosecutorial misconduct in his direct appeal. The record also shows the motion court found that Movant failed to prove any of his allegations of prosecutorial misconduct. The official document in which Movant claims Reeves advocated the death penalty actually was a "victim impact" statement filed by family members. Reeves also did not participate in, or contribute to the State's prosecution, but instead worked in another city as the 37th Judicial Child Enforcement Attorney whose only professional contact with the prosecutor's office was the occasional notice of a child support action. Reeves testified that she never sat with the prosecution at trial, and the prosecutor testified that Reeves had no influence in the charging or penalty decisions. While Reeves admitted to providing appellate decisions to the prosecutor, this act occurred after Movant's trial was concluded. None of these facts show any clear error by the motion court in denying Movant's claim of prosecutorial misconduct. Point II is denied.

---

[1] The undersigned notes that although the motion court observed Petitioner's claim not to be cognizable in a post-conviction proceeding inasmuch as the instant claim should have been raised on direct appeal, Allen v. State, 903 S.W.2d 246, 247 (Mo. Ct. App. 1995); see also

Armine v. State, 903 S.W.2d 531, 536 (Mo. banc 1990) (issues of trial error are not cognizable unless exceptional circumstances are shown justifying the failure to raise the issues on direct appeal), the court continued to determine the merits of Petitioner's claim.

(Resp. Exh. 18 at 8-9).

The state court's rejection of Petitioner's claim constituted adjudication on the merits of the claim and must be reviewed under the deferential provisions of 28 U.S.C. § 2254(d)(1). Section 2254(d)(1) requires federal habeas courts to test the findings of state courts only against clearly established federal law, as determined by the Supreme Court of the United States. Further, § 2254(d)(1) prohibits the issuance of a writ of habeas corpus unless the state court's decision is contrary to, or involved an unreasonable application of that clearly established law. Williams v. Taylor, 529 U.S. 362, 379 (2000). The federal law must be clearly established at the time Petitioner's state conviction became final, and the source of doctrine for such law is limited to the United States Supreme Court. Id. at 380-83.

A state court's decision is contrary to clearly established Supreme Court precedent when it is opposite to the Court's conclusion on a question of law or different than the Court's conclusion on a set of materially indistinguishable facts. Williams, 529 U.S. at 412-13; Carter v. Kemna, 255 F.3d 589, 591 (8th Cir. 2001). A state court's determination is an unreasonable application of Supreme Court precedent if it unreasonably refuses to extend a legal principle to a new context where it should apply. Carter, 255 F.3d at 592 (citing Williams, 529 U.S. at 407). "Federal habeas relief is warranted only when the refusal was 'objectively unreasonable,' not when it was merely erroneous or incorrect." Id. (quoting Williams, 529 U.S. at 410-11).

At the time Petitioner's conviction became final, the law was clearly established that prosecutorial misconduct may be grounds for habeas relief when it "implicate[s] ... specific rights of the accused." Darden v. Wainwright, 477 U.S. 168, 182 (1986). "As a general rule, 'prosecutorial misconduct does not merit federal habeas relief unless the misconduct infected the trial with enough

unfairness to render [a] petitioner's conviction a denial of due process.'" <u>Louisell v. Director of Iowa Dep't of Corrs.</u>, 178 F.3d 1019, 1023 (8th Cir. 1999) (internal citations omitted); <u>Roberts v. Bowersox</u>, 137 F.3d 1062, 1066 (8th Cir. 1998) (prosecutorial misconduct does not warrant federal habeas relief unless misconduct infected trial with enough unfairness to render conviction denial of due process). A petitioner must show both that the prosecutor engaged in misconduct and that there is a "reasonable probability that the error complained of affected the outcome of the trial - i.e., that absent the alleged impropriety the verdict probably would have been different." <u>Stringer v. Hedgepeth</u>, 280 F.3d 826, 829 (8th Cir. 1998) (quoting <u>Anderson v. Goeke</u>, 44 F.3d 675, 679 (8th Cir. 1995)).

After careful review of the record, the undersigned can find no specific constitutional protection that was violated or how the alleged prosecutorial misconduct challenged by Petitioner so prejudiced him as to deny him due process. A review of the record shows that on November 29, 1995, the prosecutor filed a Notice of Intent to Waive Death Penalty wherein he opined:

> [The State] will not seek the death penalty in the above-styled case. The State will prosecute the defendant under the present charge of murder in the first degree, but waives its right to seek the death penalty if successful on the merits. No aggravating circumstances will be pursued.

(Resp. Exh. 6 at 59). At the post-conviction relief hearing, the prosecutor testified that Kathy Reeves, decedent's sister, did not influence his charging decision in the case nor did she participate in the prosecution of Petitioner in any manner by interviewing or questioning witnesses, or arguing any motions. (Resp. Exh. 11 at 38-40). Likewise, at the post-conviction relief hearing, Ms. Reeves testified that the prosecutors made the decision whether to pursue the death penalty in the instant case, but in her Crime Victim Impact Statement, she advocated in support of the death penalty.

(Resp. Exh. 11 at 26). Further, Ms. Reeves testified that she is the chief counsel for the 37th Judicial Juvenile Division in Shannon County, and at the time of the trial, she served as an assistant prosecuting attorney for the 37th Judicial Circuit for the limited purpose of prosecuting child support cases. (Resp. Exh. 11 at 23). Ms. Reeves testified that during the trial, she sat behind the rail with the other spectators, and she never conferred with the prosecutors nor did she discuss their trial strategy or give advice. (Resp. Exh. 11 at 23-24, 25-26). Ms. Reeves testified during the post-conviction relief proceedings, she faxed the prosecuting attorney judicial opinions concerning whether the trial judge had to hear the case. (Resp. Exh. 11 at 25). Thus, Petitioner has failed to establish that the prosecutor engaged in misconduct

Based on the above, the state court's decision denying Petitioner relief is well based on law and fact. The undersigned is unaware of any "clearly established Federal law, as determined by the Supreme Court of the United States" of which the court's decision runs afoul, nor has Petitioner demonstrated such. Therefore, it cannot be said that the state court's adjudication of the instant claim "resulted in a decision that was contrary to, or involved an unreasonable application of," clearly established federal law. 28 U.S.C. §2254(d)(1). Neither has Petitioner shown that the court's determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). As such, the instant claim should be denied. 28 U.S.C. §2254(d).

3.     **Ground 3**

In Ground 3, Petitioner contends that he was denied effective assistance of counsel in that trial counsel failed to seek a change of venue from Shannon County to an impartial jurisdiction. In particular, Petitioner argues that by not seeking a change of venue, trial counsel permitted the trial

to be held in Shannon County, a rural county in which the decedent's family and local officials prejudiced the jury against him.

Petitioner raised this claim on appeal of his post-conviction relief. (Resp. Exh. 14 at 31-32). The Missouri Court of Appeals denied Petitioner's claim finding that counsel testified that he believed his best chance of prevailing was in Shannon County where Petitioner and his family were well liked and decedent had a bad reputation. (Resp. Exh. 18 at 9-11). In relevant part, the Missouri Court of Appeals opined as follows:

> While providing conclusions and speculation of juror bias, we once again note that Movant has failed to set out facts in support or[*sic*] his contention nor does he cite legal authority in support of his claim. Even an *ex gratia* review of Movant's point fails to show that his trial counsel provided ineffective assistance on this issue. The record reflects that Movant and his trial counsel discussed the option to change venue prior to trial, but decided against the measure. Movant's trial counsel testified at the motion hearing that he felt the best chance of prevailing would be in Shannon County, a venue where Movant and his family were well-liked, and where the Victim had a poor reputation. In light of the strong presumption that Movant's trial counsel's performance constituted sound trial strategy, and the deference we grant to counsel's performance, we cannot find that his trial counsel failed to exercise the customary skill and diligence of a reasonably competent attorney under similar circumstances.

> Movant has not demonstrated that the result of the trial would have been different had a change of venue been sought. Movant offers little more than speculation of jury bias arising from an alleged incident of a member of Victim's family talking with members of the jury pool, and based upon the fact that the rural county is sparsely populated. "Mere conjecture or speculation about potential testimony is not sufficient to establish the required prejudice." Movant has provided no evidence of juror bias, absent which we cannot conclude that Movant was prejudiced by his trial counsel's failure to request a change of venue. Nor has he demonstrated that the result of the trial would have been different had a change of venue been sought. Point III denied.

(Resp. Exh. 18 at 9-11) (internal citations omitted).

The state court's rejection of Petitioner's claim constituted adjudication on the merits of the

claim and must be reviewed under the deferential provisions of 28 U.S.C. § 2254(d)(1).  Section 2254(d)(1) requires federal habeas courts to test the findings of state courts only against clearly established federal law, as determined by the Supreme Court of the United States.  Further, § 2254(d)(1) prohibits the issuance of a writ of habeas corpus unless the state court's decision is contrary to, or involved an unreasonable application of that clearly established law.  Williams v. Taylor, 529 U.S. 362, 379 (2000).  The federal law must be clearly established at the time Petitioner's state conviction became final, and the source of doctrine for such law is limited to the United States Supreme Court.  Id. at 380-83.

A state court's decision is contrary to clearly established Supreme Court precedent when it is opposite to the Court's conclusion on a question of law or different than the Court's conclusion on a set of materially indistinguishable facts.  Williams, 529 U.S. at 412-13; Carter v. Kemna, 255 F.3d 589, 591 (8th Cir. 2001).  A state court's determination is an unreasonable application of Supreme Court precedent if it unreasonably refuses to extend a legal principle to a new context where it should apply.  Carter, 255 F.3d at 592 (citing Williams, 529 U.S. at 407).  "Federal habeas relief is warranted only when the refusal was 'objectively unreasonable,' not when it was merely erroneous or incorrect."  Id. (quoting Williams, 529 U.S. at 410-11).

At the time Petitioner's conviction became final, the law was clearly established that in order to obtain relief under the Sixth Amendment for ineffective assistance of counsel, a petitioner must show that counsel's performance was both deficient and prejudicial.  See Strickland v. Washington, 466 U.S. 668, 687 (1984).  The crucial issue is whether the petitioner suffered material prejudice due to counsel's alleged deficient performance.  Witherspoon v. Purkett, 210 F.3d 901, 903 (8th Cir. 2000).  In order to show prejudice, Petitioner must establish that there is reasonable probability that

but for trial counsel's unprofessional errors, the result of Petitioner's trial would have been different. Strickland, 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. In evaluating the probability of a different result, the court must consider the totality of the evidence. Id., 466 U.S. at 695. Rather than second-guessing counsel's actions with the benefit of hindsight, the reviewing court must examine counsel's decisions with a high degree of deference. Id., 466 U.S. at 689; White v. Helling, 194 F.3d 937, 941 (8th Cir. 1999) (the court "must resist the temptation to use hindsight to require that counsel's performance have been perfect. Only reasonable competence, the sort expected of the 'ordinary fallible lawyer' ... is demanded by the Sixth Amendment") (internal citation omitted). The petitioner bears a heavy burden in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. "Reasonable trial strategy does not constitute ineffective assistance of counsel simply because it is not successful." James v. Iowa, 100 F.3d 586, 590 (8th Cir. 1996). Furthermore, even if Petitioner show counsel's performance was deficient, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Strickland, 466 U.S. at 691.

In evaluating counsel's performance, the basic inquiry is "whether counsel's assistance was reasonable considering all the circumstances." Strickland, 466 U.S. at 688. Petitioner must show that his attorney's errors were so serious that they deprived him of his Sixth Amendment right to counsel and denied him his right to a fair trial. Id. Judicial scrutiny of counsel's performance must be highly deferential, and the petitioner must overcome the "strong presumption" that the challenged action might be considered sound trial strategy. Id. at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to

reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from the counsel's perspective at the time." Id. In deciding a claim of ineffective assistance of counsel, the court must examine the specific "acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment," and then "determine whether, in light of all of the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id. at 691. In order to satisfy the prejudice prong, Petitioner must demonstrate that there is a reasonable probability that, but for counsel's errors, the result would have been different. Id. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id.

In addressing the claim, the Court of Appeals determined Petitioner not to have shown a reasonable probability of a different result if a change of venue had been sought. Indeed, the court found that counsel's decision not to seek a change of venue was a tactical decision based on Petitioner and his family being well liked in the community and decedent having a poor reputation in the community. For the following reasons, this decision was neither contrary to, nor involved an unreasonable application of clearly established federal law, and Petitioner's claim will be denied.

In the instant claim of ineffective assistance of counsel, Petitioner specifically contends that he received ineffective assistance of trial counsel in that counsel failed to seek a change of venue. In his deposition during the post-conviction proceedings, trial counsel testified that Petitioner was in agreement with the decision not to seek a change of venue. In relevant part, trial counsel testified as follows:

> I was of the opinion and he agreed that the best venue would be his own county. His family was well liked, his mom and dad was[*sic*] very nice people, well liked in the community. His father-in-law had been school superintendent there or principal there

- 28 -

for many, many years, he was very well liked as was his mother-in-law.  So the decision was made to keep it in Shannon County.

\*\*\*

And everyone was of the same opinion that the best chance for Tommy would be to stay in Shannon County.  There would be friends or neighbors that one of those two families would at least have an acquaintance with or know.  Although Shannon County is a big geographic area, not very many people in it.

(Resp. Exh. 12 at 23, 25).  In addressing the claim, the Missouri Court of Appeals determined that the decision not to seek a change of venue constituted sound trial strategy, and the court could not find that trial counsel failed to exercise the customary skill and diligence of a reasonably competent attorney under the circumstances.  These findings are fairly supported by the record and this Court finds no basis for departing from that analysis.

The state court's rejection of Petitioner's claim constituted adjudication on the merits of the claim and must be reviewed under the deferential provisions of 28 U.S.C. § 2254(d)(1).  Section 2254(d)(1) requires federal habeas courts to test the findings of state courts only against clearly established federal law, as determined by the Supreme Court of the United States.  Further, § 2254(d)(1) prohibits the issuance of a writ of habeas corpus unless the state court's decision is contrary to, or involved an unreasonable application of that clearly established law.  Williams v. Taylor, 529 U.S. 362, 379 (2000).  The federal law must be clearly established at the time Petitioner's state conviction became final, and the source of doctrine for such law is limited to the United States Supreme Court.  Id. at 380-83.

A state court's decision is contrary to clearly established Supreme Court precedent when it is opposite to the Court's conclusion on a question of law or different than the Court's conclusion on a set of materially indistinguishable facts.  Williams, 529 U.S. at 412-13; Carter v. Kemna, 255

F.3d 589, 591 (8th Cir. 2001).  A state court's determination is an unreasonable application of Supreme Court precedent if it unreasonably refuses to extend a legal principle to a new context where it should apply.  Carter, 255 F.3d at 592 (citing Williams, 529 U.S. at 407).  "Federal habeas relief is warranted only when the refusal was 'objectively unreasonable,' not when it was merely erroneous or incorrect."  Id. (quoting Williams, 529 U.S. at 410-11).

In the instant cause, the Court of Appeals articulated the Strickland standard of review (Resp. Exh. 18 at 4-5) and found Petitioner not to have shown prejudice by counsel's conduct inasmuch as, regardless of the failure to seek a change of venue, the result of the trial would not have been different.  Such determination was not contrary to, nor involved an unreasonable application of, clearly established federal law.  28 U.S.C. § 2254(d)(1).

Based on the above, the state court's decision denying Petitioner relief is well based on law and fact.  This Court is unaware of any "clearly established Federal law, as determined by the Supreme Court of the United States" of which the court's decision runs afoul, nor has Petitioner demonstrated such.  Therefore, it cannot be said that the state court's adjudication of the instant claims "resulted in a decision that was contrary to, or involved an unreasonable application of," clearly established federal law. 28 U.S.C. §2254(d)(1).  Neither has Petitioner shown that the court's determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  As such, the instant claim should be denied.  28 U.S.C. §2254(d).

### 4.    **Ground 4**

In Ground 4, Petitioner contends that he was denied effective assistance of counsel in that trial counsel failed to inform Petitioner that if he pleaded self-defense it would render inadmissible the

evidence of the decedent's alleged sexual molestation of C.G.B. In particular, Petitioner argues that his trial counsel's failure to advise him of these risks adversely affected his understanding of the legal situation and the testimony he offered at trail.

Petitioner raised this claim on appeal of his post-conviction relief. (Resp. Exh. 14 at 32-33). The Missouri Court of Appeals denied Petitioner's claim finding that even assuming the veracity of his allegations, Petitioner has failed "to explain what he would have done differently had he been more fully advised." (Resp. Exh. 18 at 11). In relevant part, the Missouri Court of Appeals opined as follows:

> Movant's claim reveals no deficient performance by his trial attorneys. As discussed in Point I, any evidence of Victim's alleged molestation of C.G.B. did not relate to Movant's claim that he acted in self-defense or to his subsequent claim that he acted in defense of a third party. As best we discern, Movant did not examine his trial attorneys as to this allegation during the post-conviction relief hearing, nor did he relate to the motion court what he would have done differently given the circumstances of the case. Even assuming the truthfulness of Movant's allegations, Movant also fails in this appeal to explain what he would have done differently had he been more fully advised. He has not shown a reasonable probability that he result of the proceeding would have been different had he otherwise been more fully advised of the risks attendant to a self-defense plea. Point IV denied.

(Resp. Exh. 18 at 11) (internal citations omitted).

At the time Petitioner's conviction became final, the law was clearly established that the Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. <u>Strickland v. Washington</u>, 466 U.S. 668, 686 (1984). To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show that 1) his counsel's performance was deficient, and 2) the deficient performance prejudiced his defense. <u>Id.</u> at 687. In evaluating counsel's performance, the basic inquiry is "whether counsel's assistance was reasonable considering all the circumstances." <u>Id.</u> at 688. The petitioner bears a heavy burden in overcoming "a strong presumption that counsel's

conduct falls within the wide range of reasonable professional assistance." Id. at 689. To establish prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

In this cause, the Missouri Court of Appeals applied the Strickland standard to Petitioner's claim of ineffective assistance of counsel and determined Petitioner not to have shown prejudice by counsel's conduct inasmuch as Petitioner "has not shown a reasonable probability that the result of the proceeding would have been different had he otherwise been more fully advised of the risks attendant to a self-defense plea." (Resp. Exh. 18 at 11). Such determination was not contrary to, and did not involve an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d)(1).

Based on the above, the state court's decision denying Petitioner relief is well based on law and fact. This Court is unaware of any "clearly established Federal law, as determined by the Supreme Court of the United States" of which the court's decision runs afoul, nor has Petitioner demonstrated such. Therefore, it cannot be said that the state court's adjudication of the instant claims "resulted in a decision that was contrary to, or involved an unreasonable application of," clearly established federal law. 28 U.S.C. §2254(d)(1). Neither has Petitioner shown that the court's determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). As such, the instant claim should be denied. 28 U.S.C. §2254(d).

5.     **Ground 5**

In Ground 5, Petitioner contends that he was denied effective assistance of counsel in that trial counsel failed to discover that the trial judge had once represented the decedent's grandfather in a divorce and to request a change of judge once that relationship was discovered.

Petitioner raised this claim on appeal of his post-conviction relief. (Resp. Exh. 14 at 33-35). The Missouri Court of Appeals denied Petitioner's claim finding that Petitioner has failed to satisfy either prong of the Strickland test. (Resp. Exh. 18 at 12). In relevant part, the Missouri Court of Appeals opined as follows:

> Once again, we note that while providing conclusions and speculation that he was prejudiced by the trial judge's prior representation of Victim's grandfather, Movant has failed to specifically set out facts or cite any legal authority in support of his contention. A movant must cite appropriate and available precedent if he expects to prevail, and we may consider his point abandoned if he fails to do so or to explain the absence of such precedent. Accordingly, we could dismiss this point of appeal.
>
> In our *ex gratia* review of the record, we find that Movant has failed to satisfy either prong of the **Strickland** test. "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." "What investigation decisions are reasonable depends 'critically' on what information the defendant has supplied his lawyer."
>
> Here, trial counsel testified that he was unaware of any relationship between Judge Price and Victim's grandfather until after trial. We cannot find that trial counsel was ineffective for failing to investigate whether Judge Price may have represented Victim's grandfather in a divorce action decades prior to the trial.FN8
>
>> FN8. We also note that the record indicates that the motion court did not find that Judge Price had ever represented Victim's grandfather, but rather he "may have" represented him decades prior to this action.
>
> Furthermore, trial counsel testified that he and Movant discussed the assignment of Judge Price to the case and elected to keep him because the judge formerly served as a criminal defense attorney. Movant's trial counsel also testified that he had previously argued in front of the judge and felt comfortable with the appointment. Movant has presented no authority to suggest that this decision was not a reasonable

- 33 -

trial strategy. Nor has Movant presented any evidence to indicate Judge Price was aware of a distant connection with one of Victim's relatives. "It is presumed that judges will not undertake to preside in a proceeding where they cannot be impartial. The judge himself or herself is in the best position to decide whether recusal is necessary." Movant also has failed to establish any resulting prejudice - i.e., that a different judge who did not have this decades-old connection would have admitted testimony regarding the alleged molestation. As discussed previously, testimony on this issue properly was limited because it did not pertain to the Movant's claim of self-defense. Point V is denied.

(Resp. Exh. 18 at 11-13) (internal citations and footnote omitted).

The Supreme Court has recognized that there is a constitutional right to have a detached judge. Ward v. Village of Monroeville, 409 U.S. 57, 60 (1972). Speculation as to a judge's ability to remain impartial is not sufficient to require a judge to recuse himself from a particular case. "[M]ost questions concerning a judge's qualifications to hear a case are not constitutional ones, because the Due Process Clause of the Fourteenth Amendment establishes a constitutional floor, not a uniform standard." Bracy v. Gramley, 520 U.S. 899, 904 (1997).

At the time Petitioner's conviction became final, the law was clearly established that in order to obtain relief under the Sixth Amendment for ineffective assistance of counsel, a petitioner must show that counsel's performance was both deficient and prejudicial. See Strickland v. Washington, 466 U.S. 668, 687 (1984). The crucial issue is whether the petitioner suffered material prejudice due to counsel's alleged deficient performance. Witherspoon v. Purkett, 210 F.3d 901, 903 (8th Cir. 2000). In order to show prejudice, Petitioner must establish that there is reasonable probability that but for trial counsel's unprofessional errors, the result of Petitioner's trial would have been different. Strickland, 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. In evaluating the probability of a different result, the court must consider the totality of the evidence. Id., 466 U.S. at 695. Rather than second-guessing counsel's

actions with the benefit of hindsight, the reviewing court must examine counsel's decisions with a high degree of deference. Id., 466 U.S. at 689; White v. Helling, 194 F.3d 937, 941 (8th Cir. 1999) (the court "must resist the temptation to use hindsight to require that counsel's performance have been perfect. Only reasonable competence, the sort expected of the 'ordinary fallible lawyer' ... is demanded by the Sixth Amendment") (internal citation omitted). The petitioner bears a heavy burden in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. "Reasonable trial strategy does not constitute ineffective assistance of counsel simply because it is not successful." James v. Iowa, 100 F.3d 586, 590 (8th Cir. 1996). Furthermore, even if Petitioner show counsel's performance was deficient, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Strickland, 466 U.S. at 691.

In evaluating counsel's performance, the basic inquiry is "whether counsel's assistance was reasonable considering all the circumstances." Strickland, 466 U.S. at 688. Petitioner must show that his attorney's errors were so serious that they deprived him of his Sixth Amendment right to counsel and denied him his right to a fair trial. Id. Judicial scrutiny of counsel's performance must be highly deferential, and the petitioner must overcome the "strong presumption" that the challenged action might be considered sound trial strategy. Id. at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from the counsel's perspective at the time." Id. In deciding a claim of ineffective assistance of counsel, the court must examine the specific "acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment," and then "determine whether, in light of all of the

circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id. at 691. In order to satisfy the prejudice prong, Petitioner must demonstrate that there is a reasonable probability that, but for counsel's errors, the result would have been different. Id. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id.

In addressing the claim, the Court of Appeals determined Petitioner not to have shown a reasonable probability of a different result if a different judge had presided over the trial. Indeed, the court found that counsel's decision not to seek a change of judge was a tactical decision based on the judge's background as a defense lawyer and trial counsel having previously argued before the judge. These findings are fairly supported by the record and this Court finds no basis for departing from that analysis.

The state court's rejection of Petitioner's claim constituted adjudication on the merits of the claim and must be reviewed under the deferential provisions of 28 U.S.C. § 2254(d)(1). Section 2254(d)(1) requires federal habeas courts to test the findings of state courts only against clearly established federal law, as determined by the Supreme Court of the United States. Further, § 2254(d)(1) prohibits the issuance of a writ of habeas corpus unless the state court's decision is contrary to, or involved an unreasonable application of that clearly established law. Williams v. Taylor, 529 U.S. 362, 379 (2000). The federal law must be clearly established at the time Petitioner's state conviction became final, and the source of doctrine for such law is limited to the United States Supreme Court. Id. at 380-83.

A state court's decision is contrary to clearly established Supreme Court precedent when it is opposite to the Court's conclusion on a question of law or different than the Court's conclusion

on a set of materially indistinguishable facts. <u>Williams</u>, 529 U.S. at 412-13; <u>Carter v. Kemna</u>, 255 F.3d 589, 591 (8th Cir. 2001). A state court's determination is an unreasonable application of Supreme Court precedent if it unreasonably refuses to extend a legal principle to a new context where it should apply. <u>Carter</u>, 255 F.3d at 592 (citing <u>Williams</u>, 529 U.S. at 407). "Federal habeas relief is warranted only when the refusal was 'objectively unreasonable,' not when it was merely erroneous or incorrect." <u>Id.</u> (quoting <u>Williams</u>, 529 U.S. at 410-11).

In the instant cause, the Court of Appeals articulated the <u>Strickland</u> standard of review (Resp. Exh. 18 at 4-5) and found Petitioner not to have shown prejudice by counsel's conduct inasmuch as, regardless of the failure to seek a change of judge, the result of the trial would not have been different. Because Petitioner has failed to show that his attorney's performance was deficient, the trial attorney's tactical decision enjoys a strong presumption of reasonableness. Such determination was not contrary to, nor involved an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d)(1).

Based on the above, the state court's decision denying Petitioner relief is well based on law and fact. This Court is unaware of any "clearly established Federal law, as determined by the Supreme Court of the United States" of which the court's decision runs afoul, nor has Petitioner demonstrated such. Therefore, it cannot be said that the state court's adjudication of the instant claims "resulted in a decision that was contrary to, or involved an unreasonable application of," clearly established federal law. 28 U.S.C. §2254(d)(1). Neither has Petitioner shown that the court's determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). As such, the instant claim should be denied. 28 U.S.C. §2254(d).

6.     **Ground 6**

In Ground 6, Petitioner contends that he was denied effective assistance of counsel in that trial counsel failed to investigate and challenge the decedent's sister's role in the case. In particular, Petitioner argues that decedent's sister was a prosecuting attorney who advocated in official documents that he should receive the death penalty, participated in conferences, sat with the prosecution during trial, and provided legal opinions to the prosecutor.

Petitioner raised this claim on appeal of his post-conviction relief. (Resp. Exh. 14 at 35-36). The Missouri Court of Appeals denied Petitioner's claim finding that the point to be " a rehash of his second point and will not be reviewed." (Resp. Exh. 18 at 14).

At the time Petitioner's conviction became final, the law was clearly established that the Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. <u>Strickland v. Delo</u>, 466 U.S. 668, 686 (1984). To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show that 1) his counsel's performance was deficient, and 2) the deficient performance prejudiced his defense. <u>Id.</u> at 687. In evaluating counsel's performance, the basic inquiry is "whether counsel's assistance was reasonable considering all the circumstances." <u>Id.</u> at 688. The petitioner bears a heavy burden in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Id.</u> at 689. To establish prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> at 694.

As set forth in Ground 2, a review of the record shows that the prosecutor filed a Notice of Intent to Waive Death Penalty wherein he waived the State's right to seek the death penalty if

successful on the merits. (Resp. Exh. 6 at 59). At the post-conviction relief hearing, the prosecutor testified that Ms. Reeves did not influence his charging decision in the case nor did she participate in the prosecution of Petitioner in any manner by interviewing or questioning witnesses, or arguing any motions. (Resp. Exh. 11 at 38-40). Likewise, at the post-conviction relief hearing, Ms. Reeves testified that the prosecutors made the decision whether to pursue the death penalty in the instant case, but in her Crime Victim Impact Statement, she advocated in support of the death penalty. (Resp. Exh. 11 at 26). Further, Ms. Reeves testified that at the time of the trial, she served as an assistant prosecuting attorney for the 37th Judicial Circuit for the limited purpose of prosecuting child support cases. (Resp. Exh. 11 at 23). Ms. Reeves testified that during the trial, she sat behind the rail with the other spectators, and she never conferred with the prosecutors nor did she discuss their trial strategy or give advice. (Resp. Exh. 11 at 23-24, 25-26). Ms. Reeves testified during the post-conviction relief proceedings, she faxed the prosecuting attorney judicial opinions concerning whether the trial judge had to hear the case. (Resp. Exh. 11 at 25).

Counsel cannot be said to be ineffective in failing to pursue a matter upon which there is no reasonable likelihood of success. See Smith v. Armontrout, 888 F.2d 530, 545 (8th Cir. 1989); see also Thai v. Mapes, 412 F.3d 970, 978 (8th Cir. 2005) ("[The petitioner's] claim fails because [he] cannot show that his counsel performed deficiently by failing to raise a meritless argument."); Burton v. Dormire, 295 F.3d 839, 846 (8th Cir. 2002) (cannot fault counsel for failing to raise issue if no relief could possibly have been obtained); Blankenship v. United States, 159 F.3d 336, 338 (8th Cir. 1998) (no prejudice from counsel's failure to pursue non-meritorious issue); Grubbs v. Delo, 948 F.2d 1459, 1464 (8th Cir. 1991); Meyer v. Sargent, 854 F.2d 1110, 1115-16 (8th Cir. 1988). Based on the record, trial counsel was not ineffective in failing to investigate and challenge

Mr. Reeves' role inasmuch as she had no involvement in the prosecution of the case during trial other than as a victim.

Inasmuch as the Missouri Court of Appeals determined that Petitioner failed to demonstrate any prejudice, it cannot be said that its determination runs "contrary to" clearly established law. Nor can it be said that the Missouri Court of Appeals' determination constitutes an unreasonable application of this clearly established law. Therefore, the claim raised in Ground 6 of the instant petition should be denied.

### 7.    Ground 7

In Ground 7, Petitioner contends that he was denied effective assistance of counsel in that trial counsel failed to make an offer of proof regarding the decedent's alleged molestation of C.G.B. and his communication to decedent of his knowledge of that molestation. In particular, Petitioner argues that trial counsel's failure thereby prevented the appellate court from fully considering the facts supporting his offer of proof at trial.

Petitioner raised this claim on appeal of his post-conviction relief. (Resp. Exh. 14 at 36-48). The Missouri Court of Appeals denied Petitioner's claim finding that the point is "largely a rehash of a sub-point found in Point I." (Resp. Exh. 18 at 14). In relevant part, the Missouri Court of Appeals opined as follows:

> We observe that during the post-conviction relief hearing Movant presented the testimony of several witnesses regarding the alleged abuse of C.G.B., much as was done at trial. However, the psychologist who testified could not confirm that abuse of any sort had taken place. Other witnesses presented only repeated what Movant had told them after the shooting, or merely provided general statements that C.G.B. appeared to be less happy after visitation began. Furthermore, the record shows that Movant's father-in-law and mother-in-law could not properly be considered as qualified experts in this area because of their lack of training in recognizing child abuse. Neither had suspected child abuse until after Movant had told them of his own

suspicions.  In either event, as set out in Point One, the evidence Movant sought to admit did not relate to his defense asserted at trial: that of self-defense.  Movant has failed to show where he has been prejudiced by any action or inaction of his trial counsel.  Point VII is denied.

(Resp. Exh. 18 at 14-15).

At the time Petitioner's conviction became final, the law was clearly established that the Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel.  Strickland v. Delo, 466 U.S. 668, 686 (1984).  To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show that 1) his counsel's performance was deficient, and 2) the deficient performance prejudiced his defense.  Id. at 687.  In evaluating counsel's performance, the basic inquiry is "whether counsel's assistance was reasonable considering all the circumstances."  Id. at 688.  The petitioner bears a heavy burden in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Id. at 689.  To establish prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id. at 694.

Counsel cannot be said to be ineffective in failing to pursue a matter upon which there is no reasonable likelihood of success.  See Smith v. Armontrout, 888 F.2d 530, 545 (8th Cir. 1989); see also Burton v. Dormire, 295 F.3d 839, 846 (8th Cir. 2002) (cannot fault counsel for failing to raise issue if no relief could possibly have been obtained); Blankenship v. United States, 159 F.3d 336, 338 (8th Cir. 1998) (no prejudice from counsel's failure to pursue non-meritorious issue); Grubbs v. Delo, 948 F.2d 1459, 1464 (8th Cir. 1991); Meyer v. Sargent, 854 F.2d 1110, 1115-16 (8th Cir. 1988). As such, the decision of the Missouri Court of Appeals that counsel's failure to make a fuller offer

of proof regarding the alleged molestation of C.G.B. did not constitute ineffective assistance, was neither contrary to nor an unreasonable application of the clearly established federal law.  Nor has Petitioner shown that the court's determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  As such, the claim raised in Ground 7 of the instant petition should be denied.  28 U.S.C. § 2254(d).

8.      **Grounds 8 and 9**

In Ground 8, Petitioner contends that the trial court committed rare and exceptional error in its ruling in a bench conference by failing to *sua sponte* apprise Petitioner that he could testify about decedent's alleged molestation of C.G.B.  Likewise, in Ground 9, Petitioner contends that he was denied effective assistance of counsel in that trial counsel failed to apprise Petitioner of its ruling after the bench conference permitting testimony about decedent's alleged sodomy of C.G.B..  In particular, Petitioner argues that these errors prevented him from introducing evidence of the purported molestation of C.G.B. and thus prejudiced his case.

Petitioner raised these claims on appeal of his post-conviction relief.  (Resp. Exh. 14 at 36-53).  The Missouri Court of Appeals denied Petitioner's claims finding that Petitioner has failed to show exceptional circumstances justifying his failure to raise Ground 8 at trial or in the direct appeal thereby precluding him from raising the point in a motion for post-conviction relief.  (Resp. Exh. 18 at 15).[2]  With respect to Ground 9, the Missouri Court of Appeals found that Petitioner was not

---

[2]The undersigned notes that although the motion court observed Petitioner's claim not to be cognizable in a post-conviction proceeding inasmuch as the instant claim should have been raised on direct appeal, Allen v. State, 903 S.W.2d 246, 247 (Mo. Ct. App. 1995); see also Armine v. State, 903 S.W.2d 531, 536 (Mo. banc 1990) (issues of trial error are not cognizable unless exceptional circumstances are shown justifying the failure to raise the issues on direct

prejudiced. (Resp. Exh. 18 at 16-17). In relevant part, the Missouri Court of Appeals opined as follows:

> In our review of Movant's eighth point of motion court error, we recall that a Rule 29.15 motion ordinarily cannot be used as a substitute for a direct appeal, and any issue that Movant could have raised at trial or in the direct appeal cannot be raised in a motion for post-conviction relief unless exceptional circumstances are shown justifying the failure to raise the issues on direct appeal. Movant points to nothing in the record and presents no argument to demonstrate exceptional circumstances that justified his failure to raise expressly the allegation of trial court error in his direct appeal.FN9
>
>> FN9. The record shows that Movant did, in fact, get the opportunity to testify in front of the jury about what he told Victim prior to his shooting him and this was considered by the trial court. The record from the direct appeal shows the State objected when Movant started to testify about what he told Victim on the morning of the shooting, anticipating he was going to testify that he accused Victim of sexual abuse; the State argued the purported sexual abuse did not relate to Movant's fear of Victim. Movant's trial counsel declared to the trial court that Movant was going to testify that he confronted Victim with the fact that he knew that he had sexually molested "these kids" and theorized that that was why Victim made an attempt to kill Movant. The trial court then announced that "I'm going to let him answer the question once, but I don't want you dwelling on it." Thereafter, in response to trial counsel's question, "Now, tell the jury what happened then when [Victim] came up to you[?]," Movant answered: "I said, Rick, I know what you've been doing to [C.G.B.] I know what you have done to [M.]. You're not going to get [C.G.B.] this weekend and I'm taking the kids to a psychiatrist to get proof next week." Movant then testified that Victim screamed at him, declaring that "you're not going to do nothing but die ..." and then attempted to shoot Movant with a handgun and that Movant shot him in self-defense.
>
> Neither has Movant shown that it was the trial court's obligation to specifically inform him of its ruling. According to the record, Movant was represented by attorneys at trial and they both testified at the motion hearing they had informed Movant of the trial court's ruling. Additionally, as found credible by the hearing court, both of Movant's attorneys testified they had informed Movant that he

appeal), the court continued to determine the merits of Petitioner's claim.

could testify about his allegations of molestation by Victim. They also testified that Movant was within earshot of the bench conference where the trial court gave permission for Movant to testify on the matter.

In either event, Movant was not prejudiced by any of the purported omissions of either the trial judge or his attorneys, because by Movant's own admission during the course of his Rule 29.07(b)(4) hearing, Movant's testimony about a conversation at the scene of the homicide was a lie. According to Movant's testimony, Movant did not have a conversation about the purported molestation before shooting the victim. Furthermore, Movant has failed to cite any case which grants him a statutory or constitutional right to present perjured testimony, or that finds ineffective assistance of counsel for not helping him to do so. Points VIII and IX are denied.

(Resp. Exh. 18 at 15-17) (internal citations omitted).

The state court's rejection of Petitioner's claims constituted adjudication on the merits of the claims and must be reviewed under the deferential provisions of 28 U.S.C. § 2254(d)(1). Section 2254(d)(1) requires federal habeas courts to test the findings of state courts only against clearly established federal law, as determined by the Supreme Court of the United States. Further, § 2254(d)(1) prohibits the issuance of a writ of habeas corpus unless the state court's decision is contrary to, or involved an unreasonable application of that clearly established law. Williams v. Taylor, 529 U.S. 362, 379 (2000). The federal law must be clearly established at the time Petitioner's state conviction became final, and the source of doctrine for such law is limited to the United States Supreme Court. Id. at 380-83.

A state court's decision is contrary to clearly established Supreme Court precedent when it is opposite to the Court's conclusion on a question of law or different than the Court's conclusion on a set of materially indistinguishable facts. Williams, 529 U.S. at 412-13; Carter v. Kemna, 255 F.3d 589, 591 (8th Cir. 2001). A state court's determination is an unreasonable application of Supreme Court precedent if it unreasonably refuses to extend a legal principle to a new context where

it should apply.  Carter, 255 F.3d at 592 (citing Williams, 529 U.S. at 407).  "Federal habeas relief

is warranted only when the refusal was 'objectively unreasonable,' not when it was merely erroneous

or incorrect."  Id. (quoting Williams, 529 U.S. at 410-11).  To be unreasonable, the state court's

application of the Supreme Court precedent "must have been more than incorrect or erroneous."

Wiggins v. Smith, 539 U.S. 510, 520-21 (2003).

Petitioner's claim is based on the trial court's failure to inform him after a bench conference

that he could testify about decedent's alleged molestation of C.G.B. and he was denied effective

assistance of counsel in that trial counsel failed to apprise Petitioner of the trial court's  ruling after

the bench conference permitting testimony about decedent's alleged sodomy of C.G.B.  In making

this argument, Petitioner ignores the factual findings of the Missouri state court and proceeds on the

premise that he was not able to testify as to what he said to the decedent before shooting him.  A

review of the trial transcript shows that in fact Petitioner testified about his conversation with

decedent after the State objected and the trial court overruled the objection, determining to allow

Petitioner to "answer the question once, but I don't want [defense counsel] dwelling on it."  (Resp.

Exh. 4 at 662).  In response to his counsel's question asking him to tell the jury what happened when

decedent approached him, Petitioner testified: "I said, Rick, I know what you've been doing to

[C.G.B.].  I know what you have done to [M.].  You're not going to get [C.G.B.] this weekend and

I'm taking the kids to a psychiatrist to get proof next week."  (Resp. Exh. 4 at 664).  Likewise, the

post-conviction relief motion court opined that:

> [m]ovant has failed to show that he could not hear the exchange that took place
> during the bench conference as he was in the witness stand at the time of the bench
> conference.  Moreover, the movant has failed to show that it was the trial court's
> obligation to inform the movant of its ruling when he was represented by two
> attorneys who certainly were present during the bench conference.  As the Missouri

Court of Appeals, Southern District found, the movant was able to testify as to the admittedly fabricated self-defense theory and was not denied his constitutional right to put forth a defense. In any event, the movant, during his postconviction relief hearing testified that he waited in his vehicle at a place where he knew the victim would be, exited the vehicle when he saw the victim, and then shot the victim until he knew that the victim was dead. There was no testimony that any conversation took place between the movant and the victim.

(Resp. Exh. 13 at 177-78) (internal citations omitted). Further, both Petitioner's trial attorneys testified that they apprised Petitioner of the trial court's ruling during the bench conference and that at the time of the bench conference, Petitioner was within earshot of the bench conference. (Resp. Exh. 12 at Moore Depo. at 28-29 and Kidwell Depo. at 20-22). In denying the motion for post-conviction relief, the motion court further opined:

trial counsel testified by deposition that he had not told the movant that the[*sic*] he could not testify about the alleged molestation. Thus, as the movant had not been informed that he could not testify about the matter, there was no reason for trial counsel to request a recess to tell him that he could so testify. Trial counsel testified by deposition that "I told [the movant] that I would ask him that question and he would have the opportunity to [inform the jurors about the alleged molestation.]" The trial transcripts reflect that the movant was asked about the alleged molestation and was able to answer the question. In any event, the movant, during his postconviction relief hearing testified that he waited in his vehicle at a place where he knew the victim would be, exited the vehicle when he saw the victim, and then shot the victim until he knew that the victim was dead. There was no testimony that any conversation took place between the movant and the victim. The movant has not shown that trial counsel acted unreasonably.

(Resp. Exh. 13 at 178-79).

Assuming *arguendo* that the trial court had some obligation to inform Petitioner of its ruling after a bench conference when he was represented by two attorneys, the undersigned finds the state court record establishes that in fact Petitioner testified about his conversation with decedent after the State objected and the trial court overruled the objection. In rejecting his claim, the Missouri Court of Appeals found Petitioner was not prejudiced by any of the purported omissions of either the trial

court or trial attorneys inasmuch as he admitted during the Rule 29.07(b)(4) hearing that he did not have a conversation about the purported molestation before shooting the victim. Such determination was not contrary to, nor involved an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d)(1).

Counsel cannot be said to be ineffective in failing to pursue a matter upon which there is no reasonable likelihood of success. See Smith v. Armontrout, 888 F.2d 530, 545 (8th Cir. 1989); see also Burton v. Dormire, 295 F.3d 839, 846 (8th Cir. 2002) (cannot fault counsel for failing to raise issue if no relief could possibly have been obtained); Blankenship v. United States, 159 F.3d 336, 338 (8th Cir. 1998) (no prejudice from counsel's failure to pursue non-meritorious issue); Grubbs v. Delo, 948 F.2d 1459, 1464 (8th Cir. 1991); Meyer v. Sargent, 854 F.2d 1110, 1115-16 (8th Cir. 1988). As such, the decision of the Missouri Court of Appeals that counsel's alleged omission did not constitute ineffective assistance, was neither contrary to nor an unreasonable application of the clearly established federal law. Nor has Petitioner shown that the court's determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). As such, the claims raised in Grounds 8 and 9 of the instant petition should be denied. 28 U.S.C. § 2254(d).

9. **Ground 10**

In Ground 10, Petitioner contends that the State obtained its conviction via prosecutorial misconduct by improperly adducing false and materially misleading evidence and by asking questions Petitioner could not truthfully or persuasively answer without violating the motion in limine by discussing the topic of the alleged molestation.

Petitioner raised this claim on appeal of his post-conviction relief. (Resp. Exh. 14 at 55-58).

The Missouri Court of Appeals denied Petitioner's claim finding that Petitioner has failed to show exceptional circumstances justifying his failure to raise Ground 10 at trial or in the direct appeal thereby precluding him from raising the point in a motion for post-conviction relief. (Resp. Exh. 18 at 17).[3] In relevant part, the Missouri Court of Appeals opined as follows:

> In this point of error, Movant does not claim ineffective assistance based upon trial counsel's acquiescence to the prosecutor's actions, but rather claims error based upon prosecutor misconduct. As previously related, a Rule 29.15 motion ordinarily cannot be used as a substitute for a direct appeal, and a movant cannot raise issues not raised at trial or in direct appeal absent exceptional circumstances. Movant points to nothing in the record and presents no argument to demonstrate exceptional circumstances that justified his failure to raise this issue in his direct appeal.

> Furthermore, we note that while providing conclusions and speculation of prosecutorial misconduct, Movant once again has failed to specifically set out legal authority in support of his claims. A movant must cite appropriate and available precedent if he expects to prevail. When a movant "neither cites relevant authority nor explains why such authority is not available, the appellate court is justified in considering the points abandoned and dismiss the appeal." Point X is denied.

(Resp. Exh. 18 at 17-18) (internal citations omitted).

The state court's rejection of Petitioner's claim constituted adjudication on the merits of the claim and must be reviewed under the deferential provisions of 28 U.S.C. § 2254(d)(1). Section 2254(d)(1) requires federal habeas courts to test the findings of state courts only against clearly established federal law, as determined by the Supreme Court of the United States. Further, § 2254(d)(1) prohibits the issuance of a writ of habeas corpus unless the state court's decision is contrary to, or involved an unreasonable application of that clearly established law. Williams v.

---

[3]The undersigned notes that although the motion court observed Petitioner's claim not to be cognizable in a post-conviction proceeding inasmuch as the instant claim should have been raised on direct appeal, Allen v. State, 903 S.W.2d 246, 247 (Mo. Ct. App. 1995); see also Armine v. State, 903 S.W.2d 531, 536 (Mo. banc 1990) (issues of trial error are not cognizable unless exceptional circumstances are shown justifying the failure to raise the issues on direct appeal), the court continued to determine the merits of Petitioner's claim.

Taylor, 529 U.S. 362, 379 (2000). The federal law must be clearly established at the time Petitioner's state conviction became final, and the source of doctrine for such law is limited to the United States Supreme Court. Id. at 380-83.

A state court's decision is contrary to clearly established Supreme Court precedent when it is opposite to the Court's conclusion on a question of law or different than the Court's conclusion on a set of materially indistinguishable facts. Williams, 529 U.S. at 412-13; Carter v. Kemna, 255 F.3d 589, 591 (8th Cir. 2001). A state court's determination is an unreasonable application of Supreme Court precedent if it unreasonably refuses to extend a legal principle to a new context where it should apply. Carter, 255 F.3d at 592 (citing Williams, 529 U.S. at 407). "Federal habeas relief is warranted only when the refusal was 'objectively unreasonable,' not when it was merely erroneous or incorrect." Id. (quoting Williams, 529 U.S. at 410-11).

At the time Petitioner's conviction became final, the law was clearly established that prosecutorial misconduct may be grounds for habeas relief when it "implicate[s] ... specific rights of the accused." Darden v. Wainwright, 477 U.S. 168, 182 (1986). "As a general rule, 'prosecutorial misconduct does not merit federal habeas relief unless the misconduct infected the trial with enough unfairness to render [a] petitioner's conviction a denial of due process.'" Louisell v. Director of Iowa Dep't of Corrs., 178 F.3d 1019, 1023 (8th Cir. 1999) (internal citations omitted); Roberts v. Bowersox, 137 F.3d 1062, 1066 (8th Cir. 1998) (prosecutorial misconduct does not warrant federal habeas relief unless misconduct infected trial with enough unfairness to render conviction denial of due process). A petitioner must show both that the prosecutor engaged in misconduct and that there is a "reasonable probability that the error complained of affected the outcome of the trial - i.e., that absent the alleged impropriety the verdict probably would have been different." Stringer v.

Hedgepeth, 280 F.3d 826, 829 (8th Cir. 1998) (quoting Anderson v. Goeke, 44 F.3d 675, 679 (8th Cir. 1995)).

After careful review of the record, the undersigned can find no specific constitutional protection that was violated or how the alleged prosecutorial misconduct challenged by Petitioner so prejudiced him as to deny him due process. As such, the decision of the Missouri Court of Appeals that Petitioner has not provided evidentiary support of his bald accusations of prosecutorial misconduct by eliciting materially misleading evidence was neither contrary to nor an unreasonable application of the clearly established federal law. Nor has Petitioner shown that the court's determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). As such, the claim raised in Ground 10 of the instant petition should be denied. 28 U.S.C. § 2254(d).

### 10.    **Ground 11**

In Ground 11, Petitioner contends that he was denied effective assistance of counsel in that trial counsel failed to research the applicable law of defense of another so that Petitioner's admittedly perjured self-defense testimony hurt his direct appeal. In particular, Petitioner argues that he initially wanted to testify that he shot the decedent in order to defend C.G.B. from further molestation. Nonetheless, Petitioner claims that he perjured himself at trial after his trial counsel told him that he could not testify that he shot decedent in order to defend C.G.B. from further molestation, and that he could receive the death penalty. Petitioner also claims that trial counsel advised him to testify that he saw a gun to support a self-defense claim.

Petitioner raised this claim on appeal of his post-conviction relief. (Resp. Exh. 14 at 58-68). The Missouri Court of Appeals denied Petitioner's claim finding that the appellate court must abide

by the motion court's determination that Petitioner is "an admitted liar" and his testimony was self-serving and not credible inasmuch as the motion court is in a better position to determine the credibility of the witnesses and the evidence. (Resp. Exh. 18 at 19). In relevant part, the Missouri Court of Appeals opined as follows:

> In our review of the record, we cannot find that trial counsel was ineffective. Movant accused his trial counsel of failing to have him present a truthful version of the shooting. However, the record shows that Movant provided several different versions to his attorney as to why he shot Victim. Trial counsel testified that Movant initially claimed that he had a "black out," and could not remember the events leading to the shooting. Later, Movant changed his story and testified at trial that he shot Victim in self-defense. At his Rule 29.07(b)(4) hearing and his the [*sic*] post-conviction relief hearing, Movant admitted to committing perjury at trial and instead claimed that he actually shot Victim in order to protect his stepson from further molestation.

> The record reveals that Movant's trial attorneys testified they never told Movant to claim he saw a gun or to lie on the stand. The record also shows that his defense counsel did not favor that claim, as both testified that they did not believe they could succeed with the self-defense claim.

> The motion court is in the superior position to determine the credibility of the witnesses and the evidence. Here, the motion court determined that Movant was "an admitted liar" and that his testimony was self-serving and not credible. We must abide by the motion court's determination as to the credibility of Movant and his claims against his defense counsel. Point XI is denied.

(Resp. Exh. 18 at 18-19) (internal citations omitted). Those findings are fairly supported by the record and this Court finds no basis for departing from that analysis.

At the time Petitioner's conviction became final, the law was clearly established that in order to obtain relief under the Sixth Amendment for ineffective assistance of counsel, a petitioner must show that counsel's performance was both deficient and prejudicial. See Strickland v. Washington, 466 U.S. 668, 687 (1984). The crucial issue is whether the petitioner suffered material prejudice due to counsel's alleged deficient performance. Witherspoon v. Purkett, 210 F.3d 901, 903 (8th Cir.

2000). In order to show prejudice, petitioner must establish that there is reasonable probability that but for trial counsel's unprofessional errors, the result of petitioner's trial would have been different. Strickland, 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. In evaluating the probability of a different result, the court must consider the totality of the evidence. Id., 466 U.S. at 695. Rather than second-guessing counsel's actions with the benefit of hindsight, the reviewing court must examine counsel's decisions with a high degree of deference. Id., 466 U.S. at 689. The petitioner bears a heavy burden in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id.

In the instant claim of ineffective assistance of counsel, Petitioner specifically contends that counsel failed to research the applicable law of defense of another so that Petitioner's admittedly perjured self-defense testimony hurt his direct appeal. In particular, Petitioner argues that he initially wanted to testify that he shot the decedent in order to defend C.G.B. from further molestation. Nonetheless, Petitioner claims that he perjured himself at trial after his trial counsel told him that he could not testify that he shot decedent in order to defend C.G.B. from further molestation, and that he could receive the death penalty. Petitioner also claims that trial counsel advised him to testify that he saw a gun to support a self-defense claim. In addressing the claim, the Missouri Court of Appeals opined the instant record shows that Petitioner provided several different versions to his attorney as to why he shot decedent and determined Petitioner not to have shown that counsel's alleged deficient performance prejudiced his defense. For the following reasons, this decision was neither contrary to, nor involved an unreasonable application of Strickland, and petitioner's claim should be denied.

The state court's rejection of Petitioner's claim constituted adjudication on the merits of the

claim and must be reviewed under the deferential provisions of 28 U.S.C. § 2254(d)(1). Section 2254(d)(1) requires federal habeas courts to test the findings of state courts only against clearly established federal law, as determined by the Supreme Court of the United States. Further, § 2254(d)(1) prohibits the issuance of a writ of habeas corpus unless the state court's decision is contrary to, or involved an unreasonable application of that clearly established law. Williams v. Taylor, 529 U.S. 362, 379 (2000). The federal law must be clearly established at the time Petitioner's state conviction became final, and the source of doctrine for such law is limited to the United States Supreme Court. Id. at 380-83.

A state court's decision is contrary to clearly established Supreme Court precedent when it is opposite to the Court's conclusion on a question of law or different than the Court's conclusion on a set of materially indistinguishable facts. Williams, 529 U.S. at 412-13; Carter v. Kemna, 255 F.3d 589, 591 (8th Cir. 2001). A state court's determination is an unreasonable application of Supreme Court precedent if it unreasonably refuses to extend a legal principle to a new context where it should apply. Carter, 255 F.3d at 592 (citing Williams, 529 U.S. at 407). "Federal habeas relief is warranted only when the refusal was 'objectively unreasonable,' not when it was merely erroneous or incorrect." Id. (quoting Williams, 529 U.S. at 410-11).

In its memorandum opinion, the Missouri Court of Appeals determined Petitioner's trial attorneys never directed Petitioner to testify that he saw a gun or to lie on the stand. Indeed, during the post-conviction hearing, Petitioner testified as follows:

Q.      I see. But [trial counsel] never told you to lie in court, did he?

A.      He told me not to tell the truth.

Q.      I'm sorry. [Trial counsel] never told you to lie in court, did he?

A.  Not in those words.

Q.  Thank you.  So, according to you, [trial counsel] said, "well," - or he led you to believe that you had to talk about the victim having a gun, and yet you came up with an entire story at the trial, is that correct?

A.  Yes.

Q.  So you flushed out all those details and you came up with the story that the victim had a gun, it was in his shaving kit, he pulled it out, etcetera, etcetera?

A.  Yes.

Q.  And I think your attorney said that you testified contrary to what you're saying here today, you testified a little differently at the trial.  In fact, you lied before Judge Price and that jury, is that correct?

A.  Yes.

Q.  And you admitted to Judge Price during the 29.07 examination that you had purgured[*sic*] yourself during that entire trial, is that correct?

A.  Yes.

Q.  And again, the whole self-defense story was imaginary, is that right?

A.  Yes.

(Resp. Exh. 11 at 156-57).

Trial counsel explained how Petitioner first represented that he suffered a blackout at the time of the shooting, and so based on that information and the allegations of sexual molestation of C.G.B., trial counsel planned on presenting a defense of sudden passion.  (Resp. Exh. 12 Moore Depo. at 13, 15).  Petitioner thereafter apprised trial counsel that he remembered what happened at the time of the shooting and told counsel he shot decedent in self-defense (Resp. Exh. 12 Moore Depo. at 13, 16, 39-40, 45; Kidwell Depo. at 14-15,53,57).  Because decedent had been shot in the back, trail counsel opined self-defense to be a long shot, but he had to abide by what Petitioner's account of the

shooting. (Resp. Exh. 12 Moore Depo. at 16, 39-40;Kidwell Depo. at 14-15, 53, 57). Indeed, trial

counsel testified how they formulated the defense decision based on Petitioner's revelation in the jail

cell in November as follows:

> In fact I can recall specifically, as far as -- because the suborned perjury aspect I think
> goes to the core of the self defense issue. I can remember talking to the family after
> Tommy -- we went from the jail to talk to the family and the first thing out of Dan's
> mouth was, Tommy remembers what happened and here's what it is. My impression
> of their reaction to it was kind of came as a shock to them, too, that suddenly Tommy
> would remember what happened. So at least when I was present neither I nor [the
> other trial counsel] stated there was a quid pro quo, this is the story we're going to
> make up and this is the story we're going to present and that's what you're paying me
> to do.

(Resp. Exh. 12 Kidwell Depo. at 50;Moore Depo. at 16). The record also shows that his defense

counsel did not favor the self- defense claim, as both testified that they did not believe they could

succeed with that defense. (Resp. Exh. 12 Moore Depo. at 39-40;Kidwell Depo. at 45-46). Trial

counsel further testified that they did not suborn perjury at Petitioner's trial nor did they knowingly

present false testimony or in any manner advise Petitioner to testify falsely at his trial. (Resp. Exh.

12 Moore Depo. at 46-48; Kidwell Depo. at 49-52). On the instant record, the undersigned finds that

Petitioner had failed to show constitutionally ineffective assistance of counsel. Such determination

was not contrary to, nor involved an unreasonable application of, clearly established federal law. 28

U.S.C. § 2254(d)(1).

Based on the above, it cannot be said that the state court's determinations were unreasonable

or the state court's decision denying Petitioner relief is well based on law and fact. The undersigned

is unaware of any "clearly established Federal law, as determined by the Supreme Court of the United

States" of which the court's decision runs afoul, nor has Petitioner demonstrated such. Therefore,

it cannot be said that the state court's adjudication of the instant claim "resulted in a decision that was

contrary to, or involved an unreasonable application of," clearly established federal law.  28 U.S.C.

§ 2254(d)(1).  Neither has Petitioner shown that the court's determinations "resulted in a decision

that was based on an unreasonable determination of the facts in light of the evidence presented in the

State court proceeding."  28 U.S.C. § 2254(d)(2).  As such, the claim raised in Ground 11 of the

instant petition should be denied.  28 U.S.C. § 2254(d)(2).

    11.    **Ground 12**

    In Ground 12, Petitioner alleges prosecutorial misconduct for failing to disclose the discovery

of and subsequent loss of decedent's shaving kit he held at the time of the shooting.  Petitioner argues

the State's failure to disclose this information affected his ability to present exculpatory transactional

or impeachment evidence showing whether decedent was armed and whether he acted in self-defense.

    Petitioner raised this claim on appeal of his post-conviction relief.  (Resp. Exh. 14 at 68-71).

The Missouri Court of Appeals denied Petitioner's claim finding that Petitioner has failed to show

exceptional circumstances justifying his failure to raise this point at trial or in the direct appeal thereby

precluding him from raising the point in a motion for post-conviction relief.  (Resp. Exh. 18 at 20).[4]

In relevant part, the Missouri Court of Appeals opined as follows:

> As previously related, a post-conviction relief motion ordinarily cannot be
> used as a substitute for a direct appeal.  Any issue that Movant could have raised at
> trial or in the direct appeal cannot be raised in a motion for post-conviction relief,
> unless exceptional circumstances are shown justifying the failure to raise the issues on
> direct appeal.  Movant does not show in this appeal when the shaving kit was found
> after trial.  Movant also points to nothing in the record and presents no argument to

_____

    [4]The undersigned notes that although the motion court observed Petitioner's claim not to
be cognizable in a post-conviction proceeding inasmuch as the instant claim should have been
raised on direct appeal, Allen v. State, 903 S.W.2d 246, 247 (Mo. Ct. App. 1995); see also
Armine v. State, 903 S.W.2d 531, 536 (Mo. banc 1990) (issues of trial error are not cognizable
unless exceptional circumstances are shown justifying the failure to raise the issues on direct
appeal), the court continued to determine the merits of Petitioner's claim.

demonstrate exceptional circumstances that justified his failure to raise this issue in his direct appeal.

Furthermore, Movant admitted both after trial and during his post-conviction relief hearing that, contrary to his prior testimony, he did not shoot Victim in self-defense, and that he did not see a weapon at the crime scene. Movant also admitted that even if Victim had a gun, Movant did not give him time to retrieve it from the shaving kit. We cannot fault the State for failing to turn over evidence that by the Movant's own admission did not exist.FN10

> FN10. In his post-conviction relief hearing Movant admitted that he did not see Victim with a weapon, did not know whether Victim had a weapon, and that he did not act in self-defense. He also admitted he perjured himself on the self-defense issue at trial.

Point XII is denied.

(Resp. Exh. 18 at 20) (internal citations omitted).

Well-settled United States Supreme Court precedent teaches that due process is violated where the state suppresses evidence that is favorable to the accused and is material to the issue of guilt or punishment. Brady v. Maryland, 373 U.S. 83, 87 (1963). "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682 (1985). A "reasonable probability" is one sufficient to undermine confidence in the outcome of the trial. Id. Finally, suppressed evidence is to be considered collectively to determine if it is material, in other words, if the "net effect of all such evidence" reaches "the point of 'reasonable probability.'" Kyles v. Whitley, 514 U.S. 419, 436-37 (1995).

At the time Petitioner's conviction became final, the law was clearly established that the State is obligated to turn over evidence in its possession that is both favorable to the accused and material

to guilt or punishment. <u>Pennsylvania v. Ritchie</u>, 480 U.S. 39, 57 (1987).[5] Nonetheless, the State has

no duty to disclose evidence it does not have. <u>United States v. Dierling</u>, 131 F.3d 722, 736 (8th Cir.

1997).

Nonetheless, even assuming that the disputed evidence was to some degree exculpatory, in

light of Petitioner's Rule 29.07(b)(4) hearing and post-conviction testimony that he did not shoot

decedent in self-defense contrary to his trial testimony, the "net effect of" the minimally exculpatory

evidence cannot "reasonably be taken to put the whole case in such a different light as to undermine

the confidence in the verdict." <u>See</u> <u>Id.</u> at 435-37. Accordingly, it is not contrary to Supreme Court

precedent to conclude that the allegedly suppressed evidence does not create "a reasonable

probability that, had the evidence been disclosed to the defense, the result of the proceeding would

have been different," and that therefore it is not material. <u>Kyles</u>, 514 U.S. at 433. Under Supreme

Court precedent, the result of this conclusion is that Petitioner's due process rights were not violated.

<u>See</u> <u>Id.</u> This is the same result reached by the Missouri Court of Appeals. <u>See</u> <u>Nelson v. Hvass</u>, 392

F.3d 320, 322 (8th Cir. 2004) ("[W]e may grant habeas relief only if the state court's resolution of

the claim cannot reasonably be justified under existing Supreme Court precedent."). Thus, Petitioner

is not entitled to relief under the "contrary to" provision set forth in § 2254(d)(1).

Likewise, Petitioner is not entitled to relief under the "unreasonable application" provision

of § 2254(d)(1) inasmuch as relief is warranted only where the state court decision "'identifies the

correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that

---

[5]"[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." <u>United States v. Bagley</u>, 473 U.S. 667, 682 (1985).

principle to the facts of the prisoner's case.'" Collier v. Norris, 485 F.3d 415, 421 (8th Cir. 2007) (quoting Williams, 529 U.S. at 413). It is not enough for this Court to conclude that, in its independent judgment, it would have applied federal law differently from the state court; the state court's application must have been objectively unreasonable. Id, This Court "may not overrule a state court for simply holding a view different from its own." Mitchell v. Esparza, 540 U.S. 12, 17 (2003) (per curiam). In light of the record regarding the allegedly suppressed evidence, the undersigned does not find the decision of the Missouri Court of Appeals to be "objectively unreasonable." See Collier, 485 F.3d at 421. Thus, Petitioner is not entitled to relief under the "unreasonable application" provision of § 2254(d)(1). As such, the claim raised in Ground 12 of the instant petition should be denied. 28 U.S.C. § 2254(d).

12. **Ground 13**

In Ground 13, Petitioner contends that he was denied effective assistance of counsel in that trial counsel failed to investigate the removal and loss of decedent's shaving kit from the scene of the shooting.

Petitioner raised this claim on appeal of his post-conviction relief. (Resp. Exh. 14 at 71-72). The Missouri Court of Appeals denied Petitioner's claim finding that trial counsel elicited evidence at trial regarding a shaving kit being found on the ground near where decedent had fallen and that Petitioner was not prejudiced by the absence of the shaving kit. (Resp. Exh. 18 at 21). In relevant part, the Missouri Court of Appeals opined as follows:

> First, Movant's trial counsel elicited evidence at trial that there was a shaving kit on the ground near where the Victim had fallen; trial counsel also elicited evidence as to the size of the shaving kit, and that the officers were not able to produce the shaving kit at trial. Additionally, trial counsel elicited evidence that the officers had not searched the cars or apartments in the area; and in closing argument, trial counsel

suggested that a third party may have removed the gun from the scene and concealed it. On the stand, Movant testified that someone else must have taken the Victim's gun.

Secondly, as discussed in Point XII, we find no merit in this claim because Movant was simply not prejudiced by the absence of the shaving kit. Movant has testified under oath since trial that his self-defense claim was fabricated and based on perjured testimony; and that he, Movant, did not shoot Victim in self-defense, nor did he see a weapon at the crime scene.

Movant also admitted that even if Victim had a gun, Movant did not give him time to retrieve it from any shaving kit. As we stated in Movant's direct appeal, to find error in a defense that Movant admits was totally fabricated and inapplicable "would constitute a perversion of the appellate process." Point XIII is denied.

(Resp. Exh. 18 at 21) (internal citations omitted).

At the time Petitioner's conviction became final, the law was clearly established that the Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show that 1) his counsel's performance was deficient, and 2) the deficient performance prejudiced his defense. Id. at 687. In evaluating counsel's performance, the basic inquiry is "whether counsel's assistance was reasonable considering all the circumstances." Id. at 688. The petitioner bears a heavy burden in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. To establish prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

In this cause, the post-conviction appellate court applied the Strickland standard to

Petitioner's claim of ineffective assistance of counsel and found counsel not to have been ineffective for failing to investigate the removal and loss of decedent's shaving kit from the scene of the shooting inasmuch as trial counsel elicited evidence at trial that there was a shaving kit on the ground near where the decedent had fallen as well as evidence as to the size of the shaving kit, and that the officers were not able to produce the shaving kit at trial. Specifically, the court found that the absence of the shaving kit at trial did not prejudice Petitioner inasmuch as he testified under oath that his self-defense claim was fabricated and based on perjured testimony, and that he did not shoot decedent in self-defense.

Petitioner's counsel was permitted, at his request, to interrogate Petitioner in connection with his claim of ineffective assistance of trial counsel under Rule 29.07(b)(4), at which time Petitioner testified, under oath, as follows:

(Defendant's counsel): Do you remember when I first met you in the jail?

A.     Yes.

Q.     And do you remember what I told you I wanted to hear?

A.     You wanted to hear the truth.

Q.     And did I tell you that at some point in these proceedings you would be expected to take the stand, whether that be at a new trial or here today as you are doing?

A.     Yes, you did.

Q.     And did I tell you you would have to tell the truth then?

A.     Yes, sir.

Q.     Do you remember testifying at your trial?

A.     Yes.

Q. And testifying that you shot Rick Brown in self-defense?

A. I remember testifying that, yes.

Q. Was that the truth?

A. No.

Q. You did not shoot Rick Brown in self-defense?

A. No.

Q. Could you tell us, please, why it was that you shot Rick Brown?

A. I shot Rick Brown because he had molested [M], his six year older sister. He was molesting [C.B.] and because of him and his dad getting into it and I got the phone call the night before, I thought [C.B.] would be molested that day again.

Q. Unless you did something?

A. Unless I got it stopped.

(Resp. Exh. 5 at 923-24).

Defendant claimed that his trial counsel told him that justifiable homicide or defense of a third person was not a viable defense, because he had not actually seen decedent molesting C.G.B. (Resp. Exh. 5 at 924-26). He also claimed that trial counsel told him that in order for them to use self-defense in defending the case, it would be necessary for him to testify that he saw decedent with a gun. (Resp. Exh. 5 at 925). Petitioner testified that, although he told his trial counsel what actually happened, his attorney said, "you can't say that," and that he testified at trial as he did because of his attorney's statements. (Resp. Exh. 5 at 925, 928).

On cross-examination by the State, Defendant testified:

(The Prosecutor): Mr. Jordan, then do you admit here in open court that you committed perjury when you testified before?

A.     Yes, sir, I do.

(Resp. Exh. 5 at 928-29).

Defendant's counsel later argued to the trial court that the evidence presented after sentencing was in support of his claim of ineffective assistance of counsel. He contended that Defendant's trial counsel was ineffective because if he had permitted Defendant to testify truthfully (that he killed decedent to protect C.B.), the evidence about the molestation of C.B. would have been admissible.

In finding no probable cause of ineffective assistance of counsel exists at the conclusion of the hearing, the trial court opined as follows:

> However, I do not believe the Defendant. The Court does not believe the Defendant and I do not believe that Danny Moore made those statements. He's a lawyer of great integrity. I've known him for a long time. I watched him throughout this trial and this Court was convinced that he did a very good job and I am surprised to hear that the Defendant now says that he lied under oath. That just bothers me because I observed, even in the offer of proof, I gave every benefit of the doubt, in my opinion, which may be wrong, that's what we have appellate courts for, but I gave every benefit of the doubt, an offer of proof, removed the jury, and not even from the courtroom, from this floor, and sent them down to the next floor so that the offer of proof, and I observed the witnesses in the offer of proof. I observed each and every witness during the trial and I recall these observations of it, but I'm not going into that at this point.

(Resp. Exh. 5 at 951-52).

Concluding that the absence of the shaving kit was not prejudicial, the Missouri Court of Appeals determined that trial counsel was not ineffective inasmuch as counsel cannot be ineffective for failing to locate evidence that by Petitioner's own admission was fabricated. In this cause, the appellate court applied the <u>Strickland</u> standard to Petitioner's claim of ineffective assistance of counsel and determined Petitioner not to have shown prejudice by counsel's conduct inasmuch as the validity of the defense is inapplicable, and to do so "would constitute a perversion of the appellate

process." (Resp. Exh. 18 at 21 (quoting Jordan, 937 S.W.2d at 267)).

Counsel cannot be said to be ineffective in failing to pursue a matter upon which there is no reasonable likelihood of success. See Smith v. Armontrout, 888 F.2d 530, 545 (8th Cir. 1989); see also Burton v. Dormire, 295 F.3d 839, 846 (8th Cir. 2002) (cannot fault counsel for failing to raise issue if no relief could possibly have been obtained); Blankenship v. United States, 159 F.3d 336, 338 (8th Cir. 1998) (no prejudice from counsel's failure to pursue non-meritorious issue). As such, the decision of the Missouri Court of Appeals that counsel's conduct did not constitute ineffective assistance, was neither contrary to nor an unreasonable application of clearly established federal law. Nor has Petitioner shown that the court's determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). As such, the claim raised in Ground 13 of the instant petition should be denied. 28 U.S.C. § 2254(d).

### 13. **Ground 14**

In Ground 14, Petitioner contends that he was denied effective assistance of counsel in that trial counsel failed to prepare for Petitioner's trial testimony and failed to construct a model of the shooting scene for demonstrative use at trial. Because of trial counsel's decision to use enlarged diagrams of the crime scene, Petitioner argues that he appeared disoriented and less credible when testifying about events leading up to the shooting.

Petitioner raised this claim on appeal of his post-conviction relief. (Resp. Exh. 14 at 72-74). The Missouri Court of Appeals denied Petitioner's claim finding that Petitioner fails to satisfy either prong of the Strickland test. (Resp. Exh. 18 at 22). In relevant part, the Missouri Court of Appeals opined as follows:

Once again, we observe that although Movant provides conclusions and speculation of the prejudice resulting from his trial counsel's failure to provide a model to aid testimony at trial, Movant fails to either set out facts or legal authority in support of his claims. In either event, in our review we determine Movant fails to satisfy either prong of the **Strickland** test. The use of enlarged diagrams illustrating a crime scene is a technique commonly employed at trial, and Movant provides no authority to suggest otherwise. While Movant claimed to be disoriented by the diagrams, we fail to see how he would have been any less disoriented had his trial counsel used models instead.

Furthermore, we note the conflicting testimony in the record regarding the decision to use a model. Movant claims that his trial counsel led him to rely on the model as a means of describing the scene. However, his trial counsel testified that he never told Movant that he would bring a model for use at trial or made plans to use such a model, but, instead, planned to use enlarged diagrams of the crime scene. The motion court believed the testimony offered by Movant's trial counsel. As discussed previously, the motion court is in a superior position to determine the credibility of witnesses and the evidence, and we must defer to its judgment. Furthermore, we fail to see how this omission prejudiced Movant, since he testified that he had spent his life in the small, rural community of Eminence, Missouri, where the shooting occurred.FN11

> FN11. Movant also contends that, with or without the model, his trial counsel failed to review his testimony prior to trial. However, Movant fails to state this claim in his point relied on or to provide any further details regarding this issue in the argument portion of his brief. Rule 84.04(e), Missouri Court Rules (2003), states that the argument section of an appellant's brief "shall be limited to those errors included in the 'Points Relied On.'" Movant failed to raise the issue of his trial counsel's failure to review testimony prior to trial in his point relied on. Therefore, we deem this claim abandoned.

Point XIV is denied.

(Resp. Exh. 18 at 22-23) (internal citations omitted).

The state court's rejection of Petitioner's claim constituted adjudication on the merits of the claim and must be reviewed under the deferential provisions of 28 U.S.C. § 2254(d)(1). Section 2254(d)(1) requires federal habeas courts to test the findings of state courts only against clearly established federal law, as determined by the Supreme Court of the United States. Further, §

2254(d)(1) prohibits the issuance of a writ of habeas corpus unless the state court's decision is contrary to, or involved an unreasonable application of that clearly established law. <u>Williams v. Taylor</u>, 529 U.S. 362, 379 (2000). The federal law must be clearly established at the time Petitioner's state conviction became final, and the source of doctrine for such law is limited to the United States Supreme Court. <u>Id.</u> at 380-83.

A state court's decision is contrary to clearly established Supreme Court precedent when it is opposite to the Court's conclusion on a question of law or different than the Court's conclusion on a set of materially indistinguishable facts. <u>Williams</u>, 529 U.S. at 412-13; <u>Carter v. Kemna</u>, 255 F.3d 589, 591 (8th Cir. 2001). A state court's determination is an unreasonable application of Supreme Court precedent if it unreasonably refuses to extend a legal principle to a new context where it should apply. <u>Carter</u>, 255 F.3d at 592 (citing <u>Williams</u>, 529 U.S. at 407). "Federal habeas relief is warranted only when the refusal was 'objectively unreasonable,' not when it was merely erroneous or incorrect." <u>Id.</u> (quoting <u>Williams</u>, 529 U.S. at 410-11).

At the time Petitioner's conviction became final, the law was clearly established that in order to obtain relief under the Sixth Amendment for ineffective assistance of counsel, a petitioner must show that counsel's performance was both deficient and prejudicial. <u>See</u> <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). The crucial issue is whether the petitioner suffered material prejudice due to counsel's alleged deficient performance. <u>Witherspoon v. Purkett</u>, 210 F.3d 901, 903 (8th Cir. 2000). In order to show prejudice, Petitioner must establish that there is reasonable probability that but for trial counsel's unprofessional errors, the result of Petitioner's trial would have been different. <u>Strickland</u>, 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." <u>Id.</u> In evaluating the probability of a different result, the court must

consider the totality of the evidence. Id., 466 U.S. at 695. Rather than second-guessing counsel's actions with the benefit of hindsight, the reviewing court must examine counsel's decisions with a high degree of deference. Id., 466 U.S. at 689; White v. Helling, 194 F.3d 937, 941 (8th Cir. 1999) (the court "must resist the temptation to use hindsight to require that counsel's performance have been perfect. Only reasonable competence, the sort expected of the 'ordinary fallible lawyer' ... is demanded by the Sixth Amendment") (internal citation omitted). The petitioner bears a heavy burden in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. "Reasonable trial strategy does not constitute ineffective assistance of counsel simply because it is not successful." James v. Iowa, 100 F.3d 586, 590 (8th Cir. 1996). Furthermore, even if Petitioner shows counsel's performance was deficient, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Strickland, 466 U.S. at 691.

In evaluating counsel's performance, the basic inquiry is "whether counsel's assistance was reasonable considering all the circumstances." Strickland, 466 U.S. at 688. Petitioner must show that his attorney's errors were so serious that they deprived him of his Sixth Amendment right to counsel and denied him his right to a fair trial. Id. Judicial scrutiny of counsel's performance must be deferential, and the petitioner must overcome the "strong presumption" that the challenged action might be considered sound trial strategy. Id. at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from the counsel's perspective at the time." Id. In deciding a claim of ineffective assistance of counsel, the court must examine the specific "acts or omissions of counsel that are alleged not to have been the result of

reasonable professional judgment," and then "determine whether, in light of all of the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id. at 691. In order to satisfy the prejudice prong, Petitioner must demonstrate that there is a reasonable probability that, but for counsel's errors, the result would have been different. Id. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id.

In addressing the claim, the Court of Appeals determined Petitioner not to have shown a reasonable probability of a different result if trial counsel has used models instead of enlarged diagrams illustrating a crime scene. For the following reasons, this decision was neither contrary to, nor involved an unreasonable application of clearly established federal law, and Petitioner's claim will be denied.

In the instant claim of ineffective assistance of counsel, Petitioner specifically contends that he received ineffective assistance of trial counsel in that counsel failed to used enlarged diagrams illustrating the crime scene instead of models. In his deposition during the post-conviction proceedings, trial counsel testified in relevant part as follows: "Well, we had blown up the sketches that the police had made, but no, no model where someone would build this is the building, this is the street." (Resp. 12 at 31). Trial counsel explained that he used blowups of the sketches at trial and had visited and looked over the scene of the shooting with Petitioner after the trial court granted counsel's motion requesting Petitioner accompany him to the scene. (Resp. Exh. 12 at 31-32). In addressing the claim, the Missouri Court of Appeals determined that the decision to use enlarged diagrams illustrating a crime scene is a technique commonly employed at trial, and Petitioner cited no authority suggesting otherwise. In addressing the conflicting testimony in the record regarding the decision to use enlarged diagrams instead of a model of the scene, the Missouri Court of Appeals

found as follows: "The motion court believed the testimony offered by Movant's trial counsel.  As discussed previously, the motion court is in a superior position to determine the credibility of the witnesses and the evidence, and we must defer to its judgment."  (Resp. Exh. 18 at 22-23).  Further, the appellate court opined that "we fail to see how this omission prejudiced Movant, since he testified that he had spent his life in the small, rural community of Eminence, Missouri, where the shooting occurred."  (Resp. Exh. 18 at 23).  These findings are fairly supported by the record and this Court finds no basis for departing from that analysis.

The state court's rejection of Petitioner's claim constituted adjudication on the merits of the claim and must be reviewed under the deferential provisions of 28 U.S.C. § 2254(d)(1).  Section 2254(d)(1) requires federal habeas courts to test the findings of state courts only against clearly established federal law, as determined by the Supreme Court of the United States.  Further, § 2254(d)(1) prohibits the issuance of a writ of habeas corpus unless the state court's decision is contrary to, or involved an unreasonable application of that clearly established law.  Williams v. Taylor, 529 U.S. 362, 379 (2000).  The federal law must be clearly established at the time Petitioner's state conviction became final, and the source of doctrine for such law is limited to the United States Supreme Court.  Id. at 380-83.

A state court's decision is contrary to clearly established Supreme Court precedent when it is opposite to the Court's conclusion on a question of law or different than the Court's conclusion on a set of materially indistinguishable facts.  Williams, 529 U.S. at 412-13; Carter v. Kemna, 255 F.3d 589, 591 (8th Cir. 2001).  A state court's determination is an unreasonable application of Supreme Court precedent if it unreasonably refuses to extend a legal principle to a new context where it should apply.  Carter, 255 F.3d at 592 (citing Williams, 529 U.S. at 407).  "Federal habeas relief

is warranted only when the refusal was 'objectively unreasonable,' not when it was merely erroneous or incorrect." Id. (quoting Williams, 529 U.S. at 410-11).

In the instant cause, the Court of Appeals articulated the Strickland standard of review (Resp. Exh. 18 at 4-5, 22) and found Petitioner not to have shown prejudice by counsel's conduct inasmuch as, regardless of the failure to use a model of the scene, the result of the trial would not have been different. Such determination was not contrary to, nor involved an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d)(1).

Based on the above, the state court's decision denying Petitioner relief is well based on law and fact. This Court is unaware of any "clearly established Federal law, as determined by the Supreme Court of the United States" of which the court's decision runs afoul, nor has Petitioner demonstrated such. Therefore, it cannot be said that the state court's adjudication of the instant claims "resulted in a decision that was contrary to, or involved an unreasonable application of," clearly established federal law. 28 U.S.C. §2254(d)(1). Neither has Petitioner shown that the court's determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). As such, the instant claim should be denied. 28 U.S.C. §2254(d).

### 14. __Ground 15__

In Ground 15, Petitioner contends that he was denied effective assistance of counsel in that trial counsel failed to raise objections and to preserve all but two claims of constitutional error for appellate review. Specifically, Petitioner argues that he was limited to plain error review of his claims, because his trial counsel "failed to preserve [his] grievances concerning the trial court's exclusion of evidence of the [Victim's] sodomizing of C.G.B. as a constitutional issue."

Petitioner raised this claim on appeal of his post-conviction relief. (Resp. Exh. 14 at 74-76). The Missouri Court of Appeals denied Petitioner's claim finding that trial counsel was not ineffective for failing to object to the exclusion of evidence that did not relate to self-defense or to defense of a third person. (Resp. Exh. 18 at 23-34). In relevant part, the Missouri Court of Appeals opined as follows:

> We do not find that his trial counsel was ineffective for failing to preserve objections for federal appeal relating to the alleged molestation. Movant claimed self-defense as justification for the shooting, and we have determined that evidence of the molestation did not relate to the claim of self-defense nor did the facts support a submission that he acted in defense of a third person. *See* Pounders, 913 S.W.2d at 907. We cannot find Movant's trial counsel to be ineffective for failing to object to the exclusion of evidence that did not relate to either defense, or that Movant was prejudiced by that failure. *See* discussion of Point I. Furthermore, post-conviction relief for ineffective assistance of counsel is limited to errors that prejudice a movant by denying him or her a fair trial. Strickland, 446 U.S. at 687, 104 S.Ct. at 2064. "Because the review of claims of ineffective assistance of counsel is limited to a consideration of alleged errors which denied an appellant a fair trial, a claim that counsel's inaction affected one's ability to appeal a conviction is not cognizable under Rule 29.15." State v. Baker, 850 S.W.2d 944, 950 (Mo. App. 1993); State v. Yates, 925 S.W.2d 489, 491 (Mo. App. 1996) (failure of trial attorney to 'constitutionalize' point in a motion for new trial not cognizable under Rule 29.15); *see also* Fears v. State, 991 S.W.2d 190 (Mo. App. 1999); State v. Link, 965 S.W.2d 906, 912 (Mo. App. 1998); State v. Broseman, 947 S.W.2d 520, 528 (Mo. App. 1997). Point XV is denied.

(Resp. Exh. 18 at 23-24) (internal citations omitted).

At the time Petitioner's conviction became final, the law was clearly established that the Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show that 1) his counsel's performance was deficient, and 2) the deficient performance prejudiced his defense. Id. at 687. In evaluating counsel's performance, the basic inquiry is "whether counsel's assistance was reasonable considering all the circumstances." Id. at

688. The petitioner bears a heavy burden in overcoming "a strong presumption that counsel's conduct falls within the wide range or reasonable professional assistance." Id. at 689. To establish prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

In this cause, the post-conviction court applied the Strickland standard to Petitioner's claim of ineffective assistance of counsel and found counsel not to have been ineffective for failing to preserve objections for federal appeal relating to the alleged molestation inasmuch as Petitioner claimed self-defense as justification for the shooting, and the court had determined that evidence of the molestation did not relate to the claim of self-defense nor did the facts support a submission that he acted in defense of a third person. The court further opined that the court cannot find Petitioner's trial counsel to be ineffective for failing to object to the exclusion of evidence that did not relate to either defense, or that Petitioner was prejudiced by that failure. In the alternative, the court noted how post-conviction relief for ineffective assistance of counsel is limited to errors that prejudice a Petitioner by denying him a fair trial, and thus Petitioner's instant claim regarding counsel's inaction affected his ability to appeal the conviction is not cognizable under Rule 29.15.[6]

Counsel cannot be said to be ineffective in failing to pursue a matter upon which there is no

---

[6]The undersigned notes that although the motion court observed Petitioner's claim not to be cognizable in a post-conviction proceeding inasmuch as a claim of counsel's failure to preserve an issue for appellate review does not allege an error which deprived the defendant of a fair trial, see Fears v. State, 991 S.W.2d 190 (Mo. Ct. App. 1999) (per curiam); State v. Beckerman, 914 S.W.2d 861, 864 (Mo. Ct. App. 1996) (quoting State v. Lay, 896 S.W.2d 693, 702 (Mo. Ct. App. 1995)), the court continued to determine the merits of Petitioner's claim.

reasonable likelihood of success. See Smith v. Armontrout, 888 F.2d 530, 545 (8th Cir. 1989); see also Burton v. Dormire, 295 F.3d 839, 846 (8th Cir. 2002) (cannot fault counsel for failing to raise issue if no relief could possibly have been obtained); Blankenship v. United States, 159 F.3d 336, 338 (8th Cir. 1998) (no prejudice from counsel's failure to pursue non-meritorious issue); Grubbs v. Delo, 948 F.2d 1459, 1464 (8th Cir. 1991); Smith v. Armontrout, 888 F.2d 530, 545 (8th Cir. 1989) (counsel not ineffective in failing to pursue a matter upon which there is no reasonable likelihood of success); Meyer v. Sargent, 854 F.2d 1110, 1115-16 (8th Cir. 1988). As such, the state court's decision that counsel's failure to preserve a non-meritorious issue did not constitute ineffective assistance was neither contrary to nor an unreasonable application of clearly established federal law. Nor has Petitioner shown that the court's determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). As such, the claim raised in Ground 15 of the instant petition should be denied. 28 U.S.C. § 2254(d).

15.    **Ground 17**

In Ground 17, Petitioner contends that he received ineffective assistance of direct appeal counsel in that counsel failed to provide sufficient federal constitutional authority to support the claim that the trial court erred in excluding his sodomy accusations against the decedent. Specifically, Petitioner argues that appellate counsel was ineffective for failing to preserve his grievances regarding the alleged molestation of C.G.B. for possible federal appeal.

Petitioner raised this claim on appeal of his post-conviction relief. (Resp. Exh. 14 at 74-76). The Missouri Court of Appeals denied Petitioner's claim finding that appellate counsel was not ineffective for failing to present evidence not supporting a claim of self-defense or defense of others.

(Resp. Exh. 18 at 25-26).  In relevant part, the Missouri Court of Appeals opined as follows:

> Specifically, Movant contends that his direct appeal counsel "failed to raise and preserve his grievance concerning denial of the right to present a complete defense ['as to the true reason for the shooting'] as a matter of federal constitutional law." As a result, Movant argues that he was denied a meaningful adversarial testing and is now limited to a plain error review regarding his claims.

> "In order to prove that he was deprived of the effective assistance of counsel on appeal, [Movant] must first show (1) that the actions of his appellate attorney were 'outside the wide range of professionally competent assistance,' and (2) that his counsel's errors were so severe that 'counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment and (3) that counsel's deficient performance resulted in prejudice."  "[S]trong grounds must exist showing that counsel failed to assert a claim of error which would have required reversal had it been asserted and which was so obvious from the record that a competent and effective lawyer would have recognized and asserted it."

> Here, the parallel reasons set forth in Point XV, we do not find that Movant's direct-appeal counsel was ineffective for failing to preserve grievances regarding the alleged molestation of C.G.B. for possible federal appeal.  Point XVII is denied.

(Resp. Exh. 18 at 26) (internal citations omitted).

The state court's rejection of Petitioner's claim constituted adjudication on the merits of the claim and must be reviewed under the deferential provisions of 28 U.S.C. § 2254(d)(1).  Section 2254(d)(1) requires federal habeas courts to test the findings of state courts only against clearly established federal law, as determined by the Supreme Court of the United States.  Further, § 2254(d)(1) prohibits the issuance of a writ of habeas corpus unless the state court's decision is contrary to, or involved an unreasonable application of that clearly established law.  Williams v. Taylor, 529 U.S. 362, 379 (2000).  The federal law must be clearly established at the time Petitioner's state conviction became final, and the source of doctrine for such law is limited to the United States Supreme Court.  Id. at 380-83.

A state court's decision is contrary to clearly established Supreme Court precedent when it

is opposite to the Court's conclusion on a question of law or different than the Court's conclusion on a set of materially indistinguishable facts. Williams, 529 U.S. at 412-13; Carter v. Kemna, 255 F.3d 589, 591 (8th Cir. 2001). A state court's determination is an unreasonable application of Supreme Court precedent if it unreasonably refuses to extend a legal principle to a new context where it should apply. Carter, 255 F.3d at 592 (citing Williams, 529 U.S. at 407). "Federal habeas relief is warranted only when the refusal was 'objectively unreasonable,' not when it was merely erroneous or incorrect." Id. (quoting Williams, 529 U.S. at 410-11).

At the time Petitioner's conviction became final, the law was clearly established that the Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel, including effective assistance on direct appeal. Evitts v. Lucey, 469 U.S. 387, 396-97 (1985); Strickland, 466 U.S. at 687. The Court must apply the standard set forth in Strickland to determine whether petitioner indeed received ineffective assistance of appellate counsel with regard to this issue of trial court error. Reese v. Delo, 94 F.3d 1177, 1185 (8th Cir. 1996). As such, petitioner must show that counsel's representation fell below an "objective standard of reasonableness" and that petitioner was prejudiced as a result. Strickland, 466 U.S. at 687-88, 694. To demonstrate prejudice on account of counsel's failure to raise a claim on appeal, petitioner must show a "reasonable probability that an appeal of [the] issue would have been successful and that the result of the appeal would thereby have been different." Pryor v. Norris, 103 F.3d 710, 714 (8th Cir. 1997). Petitioner must show more than that the alleged error had some conceivable effect on the outcome of the proceeding. Id. at 713. "'Virtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding.'" Id. (quoting Strickland, 466 U.S. at 693).

Counsel cannot be said to be ineffective in failing to pursue a matter upon which there is no reasonable likelihood of success. See Smith v. Armontrout, 888 F.2d 530, 545 (8th Cir. 1989) (counsel not ineffective in failing to pursue a matter which there is no reasonable likelihood of success); see also Burton v. Dormire, 295 F.3d 839, 846 (8th Cir. 2002) (cannot fault counsel for failing to raise issue if no relief could possibly have been obtained); Blankenship v. United States, 159 F.3d 336, 338 (8th Cir. 1998) (no prejudice from counsel's failure to pursue non-meritorious issue).

In this cause, the post-conviction court determined Petitioner not to have shown prejudice by counsel's conduct in failing to preserve grievances regarding the alleged molestation of C.G.B. for possible federal appeal inasmuch as Petitioner would not have obtained success on the issue and the result of the appeal would not have been different. (Resp. Exh. 13 at 184). For the following reasons, this determination was neither contrary to nor an unreasonable application of federal law.

In addressing the claim, the Court of Appeals determined Petitioner not to have shown a reasonable probability of a different result if direct-appeal counsel preserved his grievances regarding the alleged molestation of C.G.B. for possible federal appeal. Because counsel cannot be said to be ineffective in failing to pursue a matter upon which there is no reasonable likelihood of success, see Smith, 888 F.2d at 545; see also Burton, 295 F.3d at 846; Blankenship, 159 F.3d at 338; Grubbs v. Delo, 948 F.2d 1459, 1463-64 (8th Cir. 1991); Meyer v. Sargent, 854 F.2d 1110, 1115-16 (8th Cir. 1988), the decision of the state court that counsel's failure to raise a non-meritorious issue on direct appeal did not constitute ineffective assistance was neither contrary to nor an unreasonable application of clearly established federal law. Nor has Petitioner shown that the court's determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). As such,

Petitioner's claim that he was denied effective assistance of counsel on account of counsel's failure to preserve his grievances regarding the alleged molestation of C.G.B. for possible federal appeal raised in Ground 17 of the instant petition should be denied. 28 U.S.C. § 2254(d).

**16.** **Ground 18**

In Ground 18 of the instant petition, Petitioner claims that the trial court erred in admitting evidence that three days before the shooting, Petitioner was arrested driving while intoxicated two miles from the decedent's home with several loaded weapons in his vehicle. Specifically, Petitioner argues that such evidence was not probative evidence concerning the offense charged.

Petitioner raised this claim on direct appeal of his conviction. (Resp. Exh. 7 at 26-30). The Missouri Court of Appeals denied Petitioner's claim for relief. (Resp. Exh. 10 at 15-17; Jordan, 937 S.W.2d at 267-68). Specifically, the Missouri Court of Appeals found the fact that Petitioner was arrested for a DWI was merely a circumstance surrounding the evidence which was relevant to his intent to kill decedent. In relevant part, the Missouri Court of Appeals opined as follows:

> In Defendant's second point, he alleges that the trial court erred in admitting evidence that he was was [*sic*] previously arrested for driving while intoxicated, which, he argues, was evidence of other crimes and was not probative evidence concerning the offense charged. The evidence in question was that Defendant was arrested at approximately 11:40 P.M. on December 28, 1994 (less than three days before the shooting in question) within two to two and one-half miles from decedent's residence in Kansas City, which was approximately 300 miles from Defendant's residence Eminence. When he was arrested, he had four loaded firearms on the passenger seat next to him, each of which had a live shell in the chamber, and he also had additional ammunition in the car. When he was asked what he was doing with the guns, Defendant first said that he was going to visit a friend in Kansas City and that he brought them for protection because he had heard it was a "rough place." Defendant later told the same arresting officer that he had brought the guns to Kansas City to sell, but when asked why he had a shell in the chamber of each, he said that he was from Eminence where they keep all of their guns loaded. When asked the amount he wanted for the guns, Defendant said, "well, I can't sell them right now." He said, "I've got to use them first" and "then I'll sell them." He refused to answer

any additional questions when asked what he was going to use them on.

Evidence of a separate, distinct and unrelated crime is generally inadmissible unless the evidence has a legitimate tendency to establish a defendant's guilt of the crime charged. Evidence of a separate offense is admissible if it tends to establish motive, intent, absence of mistake or accident, a common scheme or plan, identity, or the *res gestae*.

A trial court has broad discretion in determining whether to admit or exclude evidence, and we will not interfere with its ruling in the absence of a clear abuse of that discretion. It is in the best position to evaluate whether the potential prejudice from relevant evidence outweighs the relevance.

In the instant case, the fact that Defendant was arrested for DWI was merely a circumstance surrounding the evidence which was relevant to Defendant's intent to kill decedent, to wit: having several loaded firearms with him, 300 miles from his home at 11:40 P.M., within two and one-half miles of decedent's residence, less than three days before he actually shot decedent, together with the officer's testimony that he said he had to use the firearms before he could sell them.

The trial court did not abuse its discretion under these facts. Defendant's second point is denied.

(Resp. Exh. 10 at 15-17; Jordan, 937 S.W.2d at 267-68) (internal citations omitted).

Petitioner alleges that the admission of the evidence that he committed other crimes in the past in evidence denied him due process of law as guaranteed by the Fourteenth Amendment of the United States Constitution. The Missouri Court of Appeals held that Petitioner was not prejudiced by the admission of the evidence. Even if it were error to admit the evidence, it is not ground for relief here.

At the time Petitioner's conviction became final, the law was clearly established that the determination as the admission of evidence under state law violates the Due Process Clause of the Fourteenth Amendment only if such determination fatally infects the trial so as to render the trial fundamentally unfair. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Lisenba v. California, 314 U.S. 219, 236 (1941). The issue of admissibility of evidence is a state law question. Estelle, 502

U.S. at 67-68; Rousan v. Roper, 436 F.3d 951, 958 (8th Cir.), cert. denied, 127 S. Ct. 68 (2006).

Rulings on the admission or exclusion of evidence in state trials rarely rise to the level of a federal

constitutional violation. Nebinger v. Ault, 208 F.3d 695, 697 (8th Cir. 2000). "A federal issue is

raised only where trial errors infringe on a specific constitutional protection or are so prejudicial as

to amount to a denial of due process." Bucklew v. Luebbers, 436 F.3d 1010, 1018 (8th Cir.), cert.

denied, 127 S. Ct. 725 (2006). "The [applicant] must show that the alleged improprieties were so

egregious that they fatally infected the proceedings and rendered his entire trial fundamentally unfair."

Rousan, 436 F.3d at 958-59 (quotation omitted).

In Missouri, whether the probative value outweighs the prejudicial effect of proffered

evidence is a question on which a trial court has wide latitude. State v. Swigert, 852 S.W.2d 158,

163 (Mo. Ct. App. 1993). The United States Supreme Court has emphasized that "it is not the

province of a federal habeas court to reexamine state-court determinations on state-law questions."

Estelle, 502 U.S. at 67. For an alleged evidentiary error to have violated Petitioner's constitutional

rights, Petitioner "must show a reasonable probability that the error affected the trial's outcome,"

Richardson v. Bowersox, 188 F.3d 973, 980 (8th Cir. 1999) (internal quotation marks and citations

omitted), that is, whether there is a reasonable probability that the verdict might have been different

had the error not occurred. Harris v. Bowersox, 184 F.3d 744, 752 (8th Cir. 1999). The federal

court must find more than trial error or even plain error to warrant habeas relief on the basis of

evidentiary questions. McCafferty v. Leapley, 944 F.2d 445, 452 (8th Cir. 1991). Therefore, the

undersigned is limited to addressing whether Petitioner's constitutional rights were violated by the

admission of the evidence. Rainer v. Department of Corrs., 914 F.2d 1067, 1072 (8th Cir. 1990).

"No due process violation exists for the admission of prior bad acts testimony unless it can be said

that the testimony was 'so conspicuously prejudicial or of such magnitude that it fatally infected the trial and deprived [defendant] of fundamental fairness.'" McDaniel v. Lockhart, 961 F.2d 1358, 1360 (8th Cir. 1992) (quoting Hobbs v. Lockhart, 791 F.2d 125, 128 (8th Cir. 1986)). For the following reasons, a review of the entire trial process here shows the admission of the evidence in question not to have rendered Petitioner's trial fundamentally unfair, and Petitioner's claim that he was denied a fair trial must fail.

The evidence complained of here, namely Petitioner's arrest driving while intoxicated two miles from the decedent's home with several loaded weapons in his vehicle three days before the shooting, was admitted after the trial court denied Petitioner's motion in limine. (Resp. Exh. 3 at 479-80). Defense counsel objected on the basis that such evidence was highly prejudicial and an effort by the State to stack inference upon inference inasmuch as the evidence involved evidence of other crimes or prior bad acts. (Resp. Exh, 3 at 479). In overruling counsel's objection, the trial court opined as follows:

> The Court again overrules, or denies your motion in limine. I'm going to permit the State to proceed, and for the record, this occurred in such close proximity to the actual alleged shooting involved, as I told you either yesterday or the last, on two or three occasions, if it had occurred, this incident in Kansas City, several months prior to the actual shooting, the Court would take a different viewpoint of it, but in this particular case, considering all of the facts as I heard in a motion day, gentlemen, and I don't have that in front of me, but several months ago, and I did take an opportunity to read the, not only your suggestions, but your cases, did research on my own, and it was the Court's conclusion that this was so close in time and due to the explanation and so forth, that the Court would permit the State to offer this evidence.

(Resp. Exh. 3 at 480). The Missouri Court of Appeals in affirming the trial court's ruling, specifically noting that based on the factual circumstances of the instant case, the admission of such evidence was relevant to Petitioner's intent to kill decedent. At trial, several eyewitnesses, Judge Robert Heller,

Margaret Ann Jones, and Diane Weinberg, placed Petitioner and his vehicle at the scene of the shooting. (Resp. Exh. 2 at 340-70; Resp. Exh. 3 at 525-45). The undersigned finds that based on the record it cannot be said that the admission of the evidence would have caused the outcome of the trial to be different.

Based on the above, the state court's decision denying Petitioner relief is well based on law and fact. The undersigned is unaware of any "clearly established Federal law, as determined by the Supreme Court of the United States" of which the court's decision runs afoul, nor has Petitioner demonstrated such. Therefore, it cannot be said that the state court's adjudication of the instant claim "resulted in a decision that was contrary to, or involved an unreasonable application of," clearly established federal law. 28 U.S.C. §2254(d)(1). Neither has Petitioner shown that the court's determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). As such, the instant claim should be denied. 28 U.S.C. §2254(d). Therefore, for all of the foregoing reasons,

**IT IS HEREBY RECOMMENDED** that Petitioner Tommy Lee Jordan's pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (filed April 7, 2004/Docket No. 1) be dismissed without further proceedings.

The parties are advised that they have eleven (11) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to timely file objections may result in a waiver of the right to appeal questions of fact. Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).


Dated this  7th  day of September, 2007.

_/s/ Terry I. Adelman_

UNITED STATES MAGISTRATE JUDGE